JOHN R. LIONBERGER, Plaintiff in Error, v. EDWARD S. ROWSE, Defendant in Error.

1. *Revenue — National Banking Associations — Shareholders — Assessment of Taxes — Construction of Statute.* — Under the provisions of the forty-first section of the act of Congress, approved June 3, 1864, amendatory of an act to provide a national currency secured by a pledge of United States stocks (U. S. Laws 1863-4, p. 112), the tax imposed by State authority upon shareholders in national banking associations must be specifically assessed against the shareholders, and not against the capital of the bank itself. But the provisions of the "Act for the assessment and collection of the revenue in the State of Missouri," approved February 4, 1864 (Adj. Sess. Acts 1863, p. 69,

§§ 19, 20), are in consonance with the act of Congress in this respect. By these sections the assessment is distinctly and separately required to be made against the shares, and under these provisions the shareholders are liable.

2. *Revenue — Act of Congress of June 3, 1864 — Proviso — Construction of Statute.—* The proviso of the forty-first section of the act of Congress of June 3, 1864, prohibiting the imposition of any greater tax than is levied upon the shares of banks organized under State authority, is simply inhibitory of any unjust or unwise discrimination being made, by which the national banks might be oppressed or taxed out of existence, and thus prevented from performing their proper functions as fiscal agents of the government; and it is no insuperable objection to the State law because this prohibition is not embraced in it. (81.)

3. *Revenue — State National Banking Acts of 1863 — Obligation of Contract — Whether impaired by.—* The national banks organized under the State law of 1863 do not come within the terms of the contract made by the State and the banks organized under the law of 1857. From the period in which they were re-organized the previously existing contract between them and the State was mutually dissolved, and was no longer binding on either party. (84.)

4. *Revenue — United States National Banking Act of 1863 — Limitation by, as to rate of State Taxation — Construction of Statute.—* The proviso of the forty-first section of the national banking act (U. S. Laws 1863–4, p. 112), declaring that the tax upon the shares of the associations shall not exceed the rate imposed upon the shares of State banks, is not violated because two banks which have retained their distinctive State organization are taxed a less amount, according to their contract. The latter are exceptional cases, and not within the rule, spirit, or intention of the act of Congress. The banks referred to in that proviso were not spoken of in any restrictive sense, but meant to include all moneyed associations, savings and banking institutions; and the idea cannot for a moment be entertained that, because two banking institutions choose to rely on their charter and avail themselves of a special privilege guaranteed to them, therefore Congress ever contemplated that the whole moneyed capital of the State should be secured by a like exemption. (85.)

### *Error to St. Louis Circuit Court.*

The facts appear in the opinion of the court.

*Sharp & Broadhead,* for plaintiff in error.

I. The assessment and levy of the tax made by the assessors of St. Louis county was erroneous and void as to the form and manner of the assessment. It is manifest, from the provisions of the statute on this subject ( Gen. Stat. 1865, ch. 12, §§ 9, 10, 27, 28, 66; ch. 13, §§ 26, 28 ), that the assessment of the shares of stock

owned by an individual is to be made against the corporation, and not against the stockholders; that the tax is to be paid by the corporation to the collector, and not by the stockholder; and that the levy and proceedings under it are against the corporation, and not against the stockholder — the corporation being the person by whom the tax is payable, in the express language of the law. The stockholder is not required to give in this stock with his other property; he is not required to pay the tax to the collector; and although his property is liable to taxation and to be sold for the non-payment of the tax assessed against it, he is not liable personally for the tax, nor can he be estopped or precluded from denying the validity of the assessment or any proceedings under it. The assessment, levy, and proceeding against him as an individual, are utterly void and without any authority of law.

II. But even if the form and manner of the assessment were in compliance with the statute law of Missouri, the tax imposed is not authorized under the provisions of the acts of Congress in relation thereto. The Third National Bank of St. Louis was created under the provisions of the act of Congress of February 25, 1863. (U. S. Laws 1862–3, p. 665.) This act was amended by the act of June 3, 1864. (U. S. Laws 1863–4, p. 99.) By the sixty-second section of the last-named act it is provided that associations organized under the act of February 25, 1863, shall enjoy all the rights and privileges of, and be subject to all the duties, liabilities, and restrictions imposed by, the act of 1864. Under the proviso to the forty-first section of the act of 1864, the shares of stock in any of the national banks may be taxed as any other property, with the proviso that the rate of taxation on such shares shall not exceed the rate imposed upon the shares in any of the banks organized under the authority of the State. The question therefore arises, what rate of taxation was or is imposed by the State of Missouri upon the shares of banks organized under State authority? Congress assumed, as it had a right to do, legislative control over the whole subject; and whatever rights were acquired by the stockholders under the act of Congress became, from the moment of the organization of the banks, vested rights, which the States had no authority to impair or interfere with.

The only State banks in existence in Missouri and organized under State authority were those established under the general banking law of 1857. The first section of the general banking law declares that "every bank which now is or shall hereafter be incorporated under the authority of this State shall be subject to the liabilities and governed by the rules contained in this act." The thirty-second section of the same act declares that "in consideration of the privileges granted by this act to the banks incorporated in this State, each banking company agrees to pay to the State annually one per cent. on the amount of capital stock paid in by the stockholders other than the State, which shall be in full of all bonus and taxes to be paid to the State by the respective banks." (Sess. Acts 1857, p. 22.) By section 12 of the act of March 18, 1861 (Sess. Acts 1861, p. 13), it is provided "that the one per cent. required to be paid by the thirty-second section of article I of said act shall be received as full compensation for all taxes of every kind whatever; and it shall not be lawful for any county, city, or town corporation, to levy or collect any tax of any kind upon or from any banks organized under said law." At the time of the passage of the act of Congress of June, 1864, there was no other mode or amount of taxation on State banks than is provided by the general banking law above recited and the amendments thereto. The State had expressly stipulated that there should be no other. The stockholders were not taxed, nor could they be taxed. There was no tax upon shares, but a tax upon the capital of the bank; and there was no provision for an *ad valorem* tax. If the State has bound itself not to tax the bank, it cannot tax the shares. (Gordon v. The Appeal Tax Court, 3 How. 147; State v. Branin, 3 Zabr. 484.) The contract made by the State of Missouri with the State banks is just as strong as in the case cited from 3 Howard. The legislature of Maryland had provided, by the eleventh section of the act of 1812, that, upon the banks complying with the conditions of the act, the faith of the State was pledged not to impose any further tax or bonus on said banks during the continuance of their charters; and the Supreme Court held that the legislature of Maryland could not, by a subsequent act, tax the stockholders upon their shares of stock.

But admitting that the legislature may, in spite of their previous legislation in regard to State banks, tax the shares of stock in State banks; the question still remains, has it been done? The act of Congress provides that the shares of stock only in national banks may be taxed; that is, they may be taxed on an *ad valorem* assessment, as other property owned by individuals may be taxed; provided that the tax so imposed upon shares shall not exceed the rate imposed upon shares in any of the banks organized under authority of the State where such association is located. There was no rate of taxation imposed upon the shares in any of the banks created by or organized under the authority of the State of Missouri at the time of the creation of this national bank, nor is there any now. The tax on shares is not a tax on capital. (Van Allen v. Nolan, 3 Wall. 583; Bradley v. The People, 4 Wall. 459.) Nor is a tax on the capital equivalent to a tax on shares. (See opinion of Judge Nelson in Van Allen v. Nolan, 3 Wall. 581.) The case of Bradley v. The People, 4 Wall. 459, is directly in point. The act of the legislature of Illinois provides for taxing the capital stock of the banks just as the act of Missouri does.

But admitting that the assessment and levy of the tax in this case had been conformable to the present State law on the subject of the assessment of shares of stock in corporations, and that the legislature had the authority to pass such a law in violation of the stipulation made with the banks; still, such assessment, if made under the present State law, would not be conformable to the provisions of the act of Congress. The act of Congress provides that the shares of an individual or the shares of a corporation may be included in the valuation of the personal property of such individual or corporation in the assessment of State taxes. The present law of Missouri does not provide for including shares of stock held by individuals in the valuation of personal property of such individual; the assessment must be against the corporation; and the tax is to be paid by the corporation. By the act of Congress, the mode of assessment, as well as the amount, is pointed out, and the State law must conform to it. The tax can not be paid over the counter of the bank. This would subject the

bank to a foreign and hostile jurisdiction; it would give to the
States the power to control the banks which are created under
the authority of the Federal Government to provide a national
currency. (See, on this point, Markoe v. Hartranfft, 6 Am. Jur.,
N. S., 487, approved in the case of The City of Pittsburgh v.
First National Bank, 55 Penn. St. 52.) The law of Pennsyl-
vania under which this decision was made is in substance precisely
the same with ours. The tax was to be paid over the counter of
the bank, by requiring the cashier to collect it from every stock-
holder and pay it. (See, also, Frazier v. Siebern *et al.*, 6 Am.
Jur., N. S., 475, a case decided by the Supreme Court of Ohio.)
The national banks are stated, by the Supreme Court of Pennsyl-
vania, in the decision above referred to, to be as entirely inde-
pendent of State legislation and State interference as the army
and navy, the mint, and the judicial tribunals of the United States.
(55 Penn. St. 48.)

III. But it is said that the provisions of our own State law
taxing shares, being older than the act of Congress, must con-
trol. The Third National Bank was incorporated on the 25th day
of December, 1863, as stated in the petition, under the provisions
of the act of Congress of February 25, 1863. Under that act
there was no provision authorizing the States to tax the shares of
national banks at all. On the contrary, the nineteenth section of
that act provides for a payment of one per cent. upon the amount
of circulation, in lieu of all taxation upon circulation or upon
bonds, leaving the question open as to whether the States might
tax the shares or not. The act of the legislature of Missouri con-
taining the provisions of the present revenue law was first passed
on the 4th of February, 1864. (Adj. Sess. Acts 1863, p. 69,
§§ 19, 20.) Then the act of Congress of June, 1864, declares
that banking associations organized under the act of February 25,
1863, shall enjoy all the rights and privileges, and be subject to
all the duties, liabilities and restrictions, provided by the act of
1864. And this is the act that contains the proviso declaring
that the tax on shares of national banks shall not exceed the rate
of taxation on shares of banks created by State authority. This
proviso, then, applies as fully to the Third National Bank, organ-

ized under the act of Congress of 1863, as if it had been organized after the passage of the act of June, 1864. But, really, the act of the Missouri legislature of February 4, 1864, providing that the president of the bank should list the shares of stock in the State banks for assessment, had nothing to operate upon. So far as the banks were concerned, it could not be construed into a repeal of the provisions of the banking act of 1857, by which it was stipulated that one per, cent. should be in lieu of all taxation; and if such had been the manifest intention of the legislature, the act would be invalid so far as the existing banks were concerned, as impairing the obligation of the contract made with the banks created under that law, which is admitted to be a valid and binding contract on the State. And there were no other banks in the State upon which the act of the legislature could operate. The laws of the State of Missouri did not authorize the creation of any other banks. The amendment to the constitution of Missouri in relation to banks was adopted and became a part of the constitution in January, 1857. (Sess. Acts 1857, p. 6.) By that act no more than ten banks could be chartered, with an aggregate capital not exceeding $20,000,000. The banking act of 1857 was passed at the same session, which contains general provisions in regard to banks, and then goes on to incorporate ten banks, whereby its whole power under the constitution was exhausted; and this the court is bound to take judicial notice of. The word "bank," as used in the Missouri constitution, means a bank of issue; for the constitution says: "Any bank so created shall be based upon a specie capital, and made liable to redeem its issues in gold and silver." When the act of Congress uses the word "bank," it is used in the same sense — as a bank of issue; that is the general acceptation of the term; the whole scope of the act of Congress shows it; the title of the act is "An act to provide a national currency, secured by a pledge of United States stocks, and to provide for the circulation and redemption thereof." It is admitted, in the argument for the defendant in error, that the law of 1857 was a contract with the banks, on the part of the State, to the effect that one per cent. on the capital stock should be in lieu of all taxation; but it is

contended that this is a special law, and that the act of Congress refers to general laws. The act of the legislature is, by its terms, a general law, and refers by the first section not only to banks incorporated by that law, but to all banks that might "thereafter be incorporated under the authority of the State." It is difficult to conceive how a law could be more general in its terms or in the effect of its provisions. While we do not contend that this would tie the hands of the legislature as to banks thereafter to be incorporated, it does make the law a general law, operating upon all banks created by the law, and all banks thereafter incorporated in the State — provided the law was not changed, as to banks thereafter created, before the act of incorporation. No banks were thereafter incorporated by the State authority before the passage of the act of Congress of 1864 — and this fact the court is bound to take judicial notice of — because the constitution did not authorize the creation of any other banks. The obvious intention of the act of Congress relating to the establishment of national banks, as appears by the preamble to the acts themselves, was to create a "national currency." This object could not be accomplished if those banks were subjected to restrictions not imposed upon the State banks, which were furnishing a paper currency for the public; because if they were subjected to those burdens, whether in the form of taxation or in any other form, the currency of the State banks would drive out that of the national banks, and thereby defeat the very object which Congress had in view, to-wit: the creation of a "national currency." Hence, they were to be as free from the burdens of taxation as the State banks.

*H. A. Clover*, for defendant in error.

It is said, on behalf of plaintiff in error, that because there was a provision in the State law chartering these banks, in the nature of a contract providing for the payment to the State of one per cent. on the amount of capital stock paid in, which was to be in full of all bonus and taxes to be paid to the State by the respective banks, therefore the State is effectually prohibited from availing itself of the benefit of the first proviso of the forty-first

section of the act of Congress of June 3, 1864, of including the shares of those national banks in the valuation of the personal property of its citizens for taxation. The law of Congress should not be made to bear any such construction ; and in looking at the proposition as to whether the tax imposed upon the national banks exceeds the rates imposed upon any of the shares in any of the banks organized under authority of the State, resort should be had to the general statute imposing a general tax upon the State banks, and not to a special law making a contract between the State and a bank.

Since the decisions of the Supreme Court of the United States in Van Allen v. The Commissioners, 3 Wallace, and the People v. The Commissioners, 4 Wallace, it is no longer an open question whether the shares of stock in these national associations shall be taxed by the State at their full value. But the case at bar turns upon the meaning of the provisos. The State, as a general proposition, taxes the shares of stock in its banks. The act of the legislature of February 4, 1864, being the act in force at the time of the assessment of the tax upon the plaintiff (Adj. Sess. Acts 1863–4, p. 65), provides that, for the support of the government of the State and the payment of the public debts, a tax shall be levied on the following objects, naming among other things shares of stock in banks and other incorporated companies. The object of taxation mentioned in the act of the legislature of February 4, 1864, was the same object as mentioned in the forty-first section of the national bank act, to-wit: shares owned by the stockholders. There were, at the time of the amendment to the constitution as above stated, many banks chartered by the State, and which were banks in every respect, having every feature and quality of any bank created by the laws of the State under the constitution of the State, except the power to emit bills of credit, which is perhaps the least valuable of the many privileges of these institutions. Such banks are the Boatmen's Savings Institution, the Building and Savings Association, and very many others doing quite as large and profitable a business as any of the banks of issue. The shareholders in these associations or banks — for banks they are — were to be taxed the prescribed rate upon their shares in the

association; and the shareholders in the national banks, and every shareholder in any bank or association, State or national, are taxed in the same manner, at the same prescribed rate, except in the cases of those banks which, having a special contract with the State, are exempt from all taxation, and, being so exempt, pay a bonus of one per cent. on the amount of the capital stock paid in annually, in full, in lieu of all other bonus or tax for their exemption.

But it will not do to look after and find a special contract for exemption from taxation, or for the payment of a sum of money in a certain mode, as a substitute for taxation, between the State and one of its banks, and, having found it, observe that State and national banks are not taxed equally. We must look to the prescribed rule of taxation for banks which are taxable under the general law; and if the State law applies this rule to both kinds of banks, the national and the State alike, the proviso of the act of Congress is satisfied, as no unjust, unequal, and improper discrimination is made between the national and the State institutions. Any other rule than this will make it impossible for the State to tax the shares of the national associations as long as the charter of any of the State banks continues in existence.

WAGNER, Judge, delivered the opinion of the court.

This case comes before us on error to the Circuit Court of St. Louis county. The question was determined in the court below on demurrer to the petition, and it is therefore necessary to inquire whether the plaintiff's pleading sets forth sufficient cause of action.

Plaintiff states in his petition that on the 14th day of September, 1867, he was the owner of two hundred shares of stock in the Third National Bank of St. Louis, a corporation duly incorporated under the provisions of the act of Congress of the United States entitled "An act to provide a national currency, secured by a pledge of United States stocks, and to provide for the circulation thereof," approved February 25, 1863, which two hundred shares of stock were of the value of $20,000; that at the date last aforesaid the said defendant was collector of the State and

county revenue for the county of St. Louis, and that at that time plaintiff was a citizen of Missouri and a resident of St. Louis county; that said Third National Bank was duly organized under the provisions of the act of Congress, on the 25th day of December, 1863; that prior to the 14th day of September, 1867, the officers having charge of the assessment of State and county taxes for the county of St. Louis aforesaid had assessed against him, as an individual stockholder in the said bank, a tax of $500 for State and county taxes; that said assessment was made and the amount of tax fixed by the officers having charge of the assessment of taxes for St. Louis county, upon a valuation of said shares of stock so owned and held by the said plaintiff, and that upon said assessed valuation of said stock the officers aforesaid levied a tax thereon of ninety-hundredths per cent. for State purposes, forty-hundredths per cent. for county purposes, and forty-hundredths per cent. for school purposes, which said assessment was made under color of law, but without any legal authority whatever.

Plaintiff further states that at the time of the organization of the said Third National Bank of St. Louis, under the act of Congress, and at the time of the levy and assessment of the said tax, certain State banks, organized under the provisions of the general banking law of the State of Missouri then in force, were in full operation as banks of discount and deposit. It is further averred that a tax bill for the above-named tax, so illegally assessed against the plaintiff, was, prior to the said 14th day of September, 1867, made out by the proper officers, in pursuance of said assessment, and regularly placed in the hands of said defendant for collection; and that defendant, on the said 14th day of September, 1867, did, under color of law, but without any legal authority, but under the pretended authority of said tax bill, the plaintiff having refused to pay the said tax, proceed to seize, and did seize, certain goods and chattels of plaintiff, to-wit: a certain package of bank notes of the value of $500, and unlawfully and wrongfully took them from the plaintiff's possession and carried them away, etc.

6—VOL. XLIII.

The petitioner then prays for judgment, and claims damages in the sum of $1,000.

As the case went off on demurrer, the allegations contained in the petition as to the matters of fact must be taken to be true; and as they stand admitted, it is the province of this court to pass judgment of law upon them.

Two questions are presented by the record, of vital and paramount importance, not only to the shareholders in the banks whose property is thus sought to be subjected to taxation, but to the whole mass of tax-paying people of this State.

Under the forty-first section of the act of Congress amendatory of the act "to provide a national currency secured by a pledge of the United States stocks," and since the decision of the Supreme Court in the case of Van Allen v. The Assessors (3 Wall. 573), there can be no doubt about the liability of shareholders in national banks to State taxation. But the subject matter which has produced litigation in many of the States is not the abstract power to tax, but whether the States, acting through their legislatures, have provided the appropriate machinery coming within the limitation of the proviso of the above mentioned section for effectuating the object in view.

By the fortieth section of the act of 1864 it is enacted: "That the president and cashier of every such association shall cause to be kept, at all times, a full and correct list of the names and residences of all the shareholders in the association, and the number of shares held by each, in the office where its business is transacted, and such list shall be subject to the inspection of all shareholders and creditors of the association, and the officers authorized to assess taxes under State authority, during business hours each day," etc.

The forty-first section of the same act of 1864 provides, by one part of it, for taxation by the United States, and prescribes how it shall be collected. The section then proceeds: "*Provided*, that nothing in this act shall be construed to prevent all the shares in any of said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes

imposed by or under State authority at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State. *Provided, further*, that the tax so imposed under the laws of any State upon the shares of any of the associations authorized by this act shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the State where the association is located. *Provided, also*, that nothing in this act shall exempt the real estate of associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real estate is taxed."

Under the provisions of this section the tax must be specifically assessed against the shareholders, and not against the capital of the bank itself. Thus, in a case which arose in Illinois, the board of supervisors of the county of Peoria refused to assess a State and county tax on two persons who were stockholders in the national banks of the city of Peoria. The auditor of public accounts appealed from the action of the board of supervisors, in behalf of the State. The Supreme Court of Illinois reversed the decision of the board, and held the shareholders liable to the tax. The law of the State under which the tax was assessed provided for taxing the capital stock of the banks, together with the surplus profits or reserved funds. No tax was imposed specifically on the shares held by the stockholders. On appeal to the Supreme Court of the United States, the decision of the Supreme Court of Illinois was reversed, and it was held that a tax on the capital of a bank was not the same thing as a tax upon the shares of which the capital is composed, and that where the State law imposed on the State banks a tax on their capital (the shares in the hands of the shareholders being exempt from tax), it could not, by operation of that law, lay a tax on the shares of banks organized under the act of 1864 providing for a national currency. (Bradley v. The People, 4 Wall. 459.)

This brings us to a consideration of the first point: whether the revenue law of this State, under and by which the tax was assessed, is in consonance with the act of Congress, and can be made available for the purpose of collecting the tax.

The assessment in this case was made under the provisions of
the act entitled "An act for the assessment and collection of the
revenue in the State of Missouri," approved February 4, 1864.
(Adj. Sess. Acts 1863–4, p. 69.)

By section nineteen of said act, persons owning shares of
stock in banks and other incorporated companies, taxable by law,
are not required to deliver to the assessor a list thereof ; but the
president or other chief officer of such corporation shall deliver
to the assessor a list of all shares of stock held therein, and the
names of the persons who hold the same.

By section twenty it is provided that the taxes assessed on
shares of stock embraced in such lists shall be paid by the corpo-
rations respectively, and they may recover from the owners of
such shares the amounts so paid by them, or deduct the same
from the dividends accruing on such shares, and the amount so
paid shall be a lien on such shares respectively, and shall be paid
before a transfer thereof can be made.

Here it will be perceived there is no assessment on the capital
stock, but the assessment is distinctly and separately required to
be made against the shares.   There is no force in the suggestion
that, because the State tax law was passed prior to the provisions
inserted in the congressional act, therefore it cannot be made to
apply, but that a subsequent act must be enacted by the legisla-
ture with direct reference to the law of Congress.   If the law on
our statute books attains the ends contemplated by the congres-
sional enactment, and is not a violation or infringement thereof,
it is of little moment at what particular day it was passed.
Doubtless a law might be framed, and unquestionably will be, by
the legislature, rendering its conformity with the national law on
this subject more precise and definite.   But in the practical appli-
cation of this question we are not to sacrifice substantial compli-
ance to mere verbiage.

The fortieth section of the act of 1864 requires the officers in
charge of the national banking associations to keep a list of the
shareholders ; which list shall be open during business hours to
the inspection of the officers authorized to assess taxes under
State authority.   The nineteenth section of the State revenue

law makes it obligatory upon the president or other chief officer of such corporations to deliver to the assessor a list of all shares of stock held therein, and the names of the persons who hold the same. There is almost an exact harmony and coincidence between the two provisions, and the laws of Congress undeniably contemplated that the assessor should apply at the banks in order to get the correct and necessary list of shares. But it is urged that the law of the State nowhere contains any limitation as required by the forty-first section of the amendatory act, prohibiting the imposition of any greater tax than is levied upon the shares of banks organized under State authority.

This is true; but we cannot see that it presents any insuperable objection. The law is simply inhibitory of any unjust or unwise discrimination being made by which the national banks might be oppressed or taxed out of existence, and thus prevented from performing their proper functions as fiscal agents of the government.

It is not stated in the petition that any distinction is made, or that the tax imposed is higher than that assessed on other moneyed institutions of the State, only in the case of the exceptions which will be hereinafter mentioned. The twentieth section of the State act declares that the taxes assessed on shares should be paid by the corporations respectively, and they may recover from the owners of such shares the amount so paid by them, or deduct the same from the dividends accruing on such shares. This does not undertake to make any charge against the corporation or the capital of the corporation; it is directed solely to the liabilities of the shares, and points out the mode by which the State shall secure her dues. I see no reason why this remedy cannot be pursued here as well as in other cases, where the State asserts a priority of lien and provides how debts and other property may be proceeded against to secure her right. But there is no averment contained in the petition alleging that the officer proceeded against, or committed any trespass on, the bank or the capital of the bank, but the action is grounded wholly on the fact that he seized the money of the individual shareholder to satisfy the taxes due and in his hands for collection. In my view of the law the shareholder was liable, and I see no cause for complaint.

The next question is, whether the State, in imposing the tax, has made any discrimination, and placed a higher rate of taxation on the shares in the national banks than she has on any of the banks organized under State authority. It is claimed that she has, and the point is much relied on by the counsel for the plaintiff in error, and has been pressed with great pertinacity, zeal and ability. In order to comprehend this question clearly it will be necessary to notice briefly the history of banking laws in the State. In accordance with power given by an amendment to the State constitution, the legislature, in 1857, incorporated a number of banking institutions, and in their charter it was provided that, in consideration of the privileges granted to them, each banking company should pay to the State annually one per cent. on the amount of the capital stock paid in by the stockholders (other than the State), which was to be in full of all bonus and taxes to be paid to the State by the respective banks. (Sess. Acts 1857, p. 22, § 32.) Under a decision of this court it was held that the above recited section only applied to State taxation, and did not preclude cities from levying municipal taxes. Application was then made to the legislature, and the section was amended and modified so as to make the one per cent. a full compensation for all taxes of every kind whatsoever, and prohibited all counties, cities, or town corporations from levying or collecting any tax of any kind upon any of the banks organized under the law. (Sess. Acts 1861, p. 13, § 12.) In 1863 the legislature passed an act authorizing the State banks organized under the banking law of 1857 to wind up their business and reorganize as national banks under the law of Congress. They all availed themselves of the privilege except two, namely, the Exchange and Mechanics' banks, which still continue to do business by authority of the charter granted by the State.

It is now insisted that at the time of the passage of the act of Congress, in 1864, there was no other mode or amount of taxation on State banks than that provided by the general banking law, and the amendment thereto; that the State had expressly stipulated there should be none other, and that the stockholders were not taxed, nor could they be; that the contract entered into by

the State with the banks cannot be impaired by imposing a greater rate of taxation than therein stipulated and agreed upon; and that under no circumstances could the tax exceed one per cent. upon the capital stock paid in, being the amount paid by the two State banks in existence. If the position contended for be correct, it will amount to a total immunity on the part of national banks, and they will escape all taxation whatever, as the State law in regard to the banks we are speaking of makes no provision for an *ad valorem* tax on shares, but makes the assessment against the capital stock paid in, which is contrary to the congressional law and the decision of the Supreme Court of the United States.

If the national bank represented by the plaintiff in error comes within the terms of the contract made by the State and the banks organized under the law of 1857 the State is bound thereby, and neither the legislature nor the courts have any power to vary or impair the rights acquired under the contract. For States may, upon a valid and sufficient consideration, make contracts which will be as binding upon them as, and which they can no more violate than, a private person. And experience has shown that they are fully as liable to make improvident ones as individuals. The case of Gordon v. Appeal Tax Courts, 3 How. 133, is cited as an authority directly in point, and it is claimed as a decision conclusive here. Gordon's case may be said to be a representative case of a class or series which have been adjudicated upon by the national tribunal. The Ohio bank tax cases involved the same subject matter, and were to a like effect. In Gordon v. Appeal Tax Court it was held that the charter of a bank was a franchise which was not taxable as such, if a price had been paid for it which the legislature accepted. By the terms of the charter it was provided that upon the bank accepting and complying with certain conditions of the act, the faith of the State should be pledged not to impose any further tax or burden upon it during its continuance. And upon this clause the court further declared that it amounted to a contract relating to something beyond a franchise, and exempted the stockholders from a tax levied upon them, as individuals, according to the amount of their stock. But I am

wholly unable to perceive the application of the principle to the case at bar. In 1857 the State entered into a contract with certain banks, by which she agreed to abstain from taxation beyond a certain amount, for a consideration mutually agreed upon. The money value paid to the State was not the only consideration. The banks, on their part, were State institutions ; they were intended to supply the people with a circulating medium, and redeem their issues in gold and silver. It was on account of the general benefits which it was supposed would accrue that extensive privileges were granted, and a small remuneration exacted in return. There is nothing requiring this case to be placed beyond the pale and operation of an ordinary action. In construing a contract, the situation of the parties at the time, the subject matter, and the intention and purpose of the parties must guide and control. The charters were to run for many years, but before the expiration of their charters, in the condition of the country, the banks found it difficult to comply with the requirements cast upon them. The legislature then conferred upon them the privilege of going into liquidation, winding up their affairs as State corporations, and organizing as new bodies in pursuance of national laws. They accepted the proposition, severed their connection with the State, and became moneyed associations of an entirely different character. From the period in which they were clothed in this new capacity the previously existing contract between them and the State was mutually dissolved, and was no longer binding on either party.

But it is further said, and it is unquestionably the strong argument on this branch of the case, that the tax cannot be sustained because it is higher than the rate paid by the two State banks (the Exchange and the Mechanics') existing under the act of 1857, and to enforce this view it is contended that they are the only banks in the State within the proper and legal meaning of the term. This is predicated on the hypothesis that an institution is not strictly a bank unless it issues or circulates currency. This, I think, is a mistake. In commercial law a bank is regarded as simply a place for the deposit of money. It is an institution (though generally incorporated yet it need not be) which is author-

ized to receive deposits of money, to lend money, and, when empowered by charter, to issue notes. It may perform one or all of these functions. Banks may be and are organized under the authority of the State without any power to issue notes of circulation.

The proviso in the forty-first section of the national banking act, imposing a limitation on the power of the States, declares that the tax upon the shares of the associations shall not exceed the rate imposed upon the shares of any of the banks organized under State authority. No peculiar or particular banks are described, and it is just to infer that Congress did not use the word in any restrictive sense, but left it to include all moneyed associations, savings and banking institutions. There are many of these banks chartered by the State, some of them with capital perhaps exceeding in amount the capital of the banks of issue, and with privileges just as valuable, with the exception of the power to emit paper. They are banks to all intents and purposes, and their shareholders are taxed at the same prescribed rate as the shareholders in the national associations. There is, then, no discrimination or distinction made between the two classes of shareholders. That the two banks which have retained their distinctive State organization are taxed a less amount, according to their contract, cannot in the least alter the case. They create no repugnance whatever. They are exceptional cases, and not within the rule, spirit, or intention of the act of Congress. It can never be tolerated, the idea cannot for a moment be entertained, that, because two banking institutions choose to rely on their charter and avail themselves of a special privilege guaranteed to them, therefore Congress ever contemplated that the whole moneyed capital of the State should be secured in a like exemption.

The value of shares of stock invested in national banks of the city of St. Louis alone is said to be about $7,500,000, and the tax per annum, for all purposes, $220,000. They have the right to increase the amount to $16,000,000, when their proper share of taxation would be $500,000. The great injustice of withdrawing this immense capital from the taxable property of the State, and

increasing the burdens of the tax-paying people at large, cannot be permitted unless the law plainly and imperatively demands it. In my opinion, the law not only does not require nor justify any such exemption, but, on the contrary, subjects it to its proper share of taxation.

Let the judgment be affirmed.    The other judges concur.