BANK OF CALIFORNIA, NATIONAL ASSOCIA-TION, *v.* RICHARDSON, TREASURER OF THE STATE OF CALIFORNIA.

ERROR TO THE SUPREME COURT OF THE STATE OF CALI-FORNIA.

No. 262.　Submitted October 14, 1918.—Decided January 27, 1919.

The extent to which the States may tax the property or the shares of national banks is determined exclusively by § 5219 of the Revised Statutes. P. 482.

The object of the section is to avoid withdrawing the financial resources of national banks from the reach of state taxation, and at the same time to protect the banks as federal agencies from state interference. It therefore, with certain restrictions, permits the shares of the bank to be taxed to the shareholders, and, in that aspect treats the ultimate beneficial interest of the bank and the shareholders as one, subject to but one taxation and by that method only. P. 483.

It follows, (1) that the interest represented by shares of a state bank,

when held by a national bank, can be reached only by a tax upon the shares of the latter, and is not taxable to the national bank itself, and (2) that shares of a national bank, when held by another national bank, are taxable only to the latter as shareholder, and are not to be included in valuing the shares of the latter when taxing its shareholders. Pp. 484, 486.

175 California, 813, reversed.

THE case is stated in the opinion.

*Mr. E. S. Pillsbury, Mr. F. D. Madison, Mr. Alfred Sutro* and *Mr. Oscar Sutro* for plaintiff in error. *Mr. A. D. Plaw* was also on the brief.

The right to tax to the Bank of California the Mission State Bank shares is implied by the California Supreme Court solely upon the ground that its existence is essential to an exertion of the power to tax the Mills National Bank shares. The court does not deny that the shares of the state bank are personal property; nor does it find any express authority in the federal statute permitting the State to tax them to the Bank of California. But because shares in one national bank in the hands of another national bank may be taxed to the latter, *Bank of Redemption* v. *Boston*, 125 U. S. 60, the court below concludes that no different rule could be applied to the taxation of shares in a state bank owned by a national bank without violating the provision of § 5219 requiring other moneyed capital to be assessed at a rate equal to that imposed upon shares in national banks. But such an implication cannot be indulged, because the effect of § 5219, in limiting the power of the States to the right to tax the real property of national banks and their shares, is to prohibit the taxation of the property of those banks in any other manner. *Raleigh & Gaston R. R. Co.* v. *Reid*, 13 Wall. 269, 270. The statute being unambiguous in its limitation, *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 669, a power to tax the Bank of California for the state bank shares could only be implied if abso-

lutely essential to the exercise of the right to tax it upon the shares of the Mills National Bank. *Belmont Bridge* v. *Wheeling Bridge*, 138 U. S. 287, 292; *Austin* v. *The Aldermen*, 7 Wall. 694, 699; *Newton* v. *Commissioners*, 100 U. S. 548, 561. But such an implied power is unnecessary. The value represented by the state bank shares might be taxed by the State, under the power conferred by § 5219, either by taxing the capital of the Mission Bank directly to the latter, (*Crocker* v. *Scott*, 149 California, 575,) which the present state constitution expressly forbids; or by including the value of those shares in the assessment of the assets of the Bank of California, and taxing the value of those assets to the latter's shareholders, as is provided by the terms of the state constitution and statute, and as was done in the present case. But the State is without the power, under the federal statute, to tax their value directly to the Bank of California.

As the attempt to do this must fail, and as the state law does not permit any other taxation of their value except by including that value in the assets of the Bank of California, which is assessed to the latter's shareholders, the effect of that law is to tax the value of the shares of the Mission Bank, owned by the Bank of California, but once, while taxing the value of the Mills National Bank shares twice, once directly to the Bank of California, as a shareholder, and again by including their value in the assets of the Bank of California, upon which a tax is assessed against the latter's shareholders.

This method of taxation is in violation of the express provision of § 5219, forbidding discrimination against national bank shares. *Mercantile Bank* v. *New York*, 121 U. S. 138, 157.

*Mr. U. S. Webb*, Attorney General of the State of California, and *Mr. Raymond Benjamin*, Chief Deputy

Attorney General of the State of California, for defendant in error:

It being conceded that the stock of all of these banks is primarily taxable to the shareholders, there can be no question of double taxation in the case. The plaintiff in its capacity as a stockholder is liable for the tax upon the Mills and Mission shares, which are held in its treasury in lieu of a certain amount of its capital, surplus or undivided profit. The stockholders of plaintiff, as such, have no right or title to any portion of th⋮ stock, their status being entirely distinct from the status of the corporation itself as stockholder. The tax paid by the plaintiff as a stockholder in no way concerns or affects the tax upon the value of the stock held by the plaintiff's stockholders.

The tax on the Mission Bank shares did not violate Rev. Stats., § 5219. In *Bank of Redemption* v. *Boston*, 125 U. S. 60, the decision did not turn solely upon the ground that the shares taxed were shares of a national bank. The statute intends not only to permit a State to tax all the shares of a national bank, but also to compel it to tax all shares of its own banks, without regard to ownership, for this is one of the mandates of the law which must be first obeyed to enable the State to tax the shares of national banks at all. The fundamental purpose was the protection of national banks in the matter of state taxation, and to compel the administration of even-handed justice. *People* v. *Weaver*, 100 U. S. 539–543; *Mercantile Bank* v. *New York*, 121 U. S. 154. The State must tax the moneyed capital in its state banks to the same extent as it taxes the shares of stock in national associations, and, in the enactment of the constitutional provision of California, a specific and uniform rule, applicable to both state and national bank stock, has been enacted.

If the shares of the Mission Bank owned by plaintiff

are exempt from taxation, because they are personal
property owned by a national bank, then, inasmuch as
the moneyed capital of the Mission Bank cannot be
taxed at the same rate as the tax levied upon the moneyed
capital in national banks, it follows that the taxation of
the shares of national banks, under the constitution of
California, will be at a greater rate than is assessed upon
other moneyed capital in the hands of individual citizens,
in violation of the federal act.

Whether a State has or has not complied with the
requirement of Congress in this particular is not to be
determined from the face of the statute, but from its
practical application and the results thereof. *Davenport
Bank* v. *Davenport*, 123 U. S. 23.

*Crocker* v. *Scott*, 149 California, 575, cited by oppos-
ing counsel, dealt with a scheme of taxation which was
superseded by the present state constitution.

MR. CHIEF JUSTICE WHITE delivered the opinion of the
court.

Except as to real estate, which is taxed directly in the
name of the owner, all the available resources of banks
for the purposes of taxation are reached under the law of
California, not by an immediate levy on the banks as the
owner, but by annual assessment and tax thereon made
by the State Board of Equalization against the stock-
holders of banks. The state law places the duty upon the
banks to pay the tax assessed against their stockholders,
with the obligation on the stockholders to repay, sanc-
tioned by a right conferred upon the banks to sell the
stock of any stockholder failing to refund.

The Bank of California, organized under the National
Banking Law and established in San Francisco, com-
menced this suit to recover the amount of a tax, levied
against its stockholders in 1915 under the law previously

stated, which it had paid under protest claiming that the tax was not only unlawful under the state law but illegal under the law of the United States governing the right of a State to tax national banks and their stockholders. The case is here to review a judgment denying the right to recover, on the ground that the tax had been lawfully exacted under both the law of the State and that of the United States.

The decision below, in so far as it rested upon the state law, is binding and we put that subject out of view. To understand the contentions as to the law of the United States requires a brief statement of the tax levied and the particulars in which it is complained of. The capital of the bank was $8,500,000, evidenced by 85,000 shares of the par value of $100 each. D. O. Mills & Company was a national bank established at Sacramento and the California Bank was a stockholder in that bank to the extent of 2,501 shares. The California Bank was also the owner of 1,001 shares of stock in the Mission Bank, a banking corporation organized under the state law and doing business in San Francisco. The Board of Equalization in 1915 fixed the value of all the assets of the California Bank at the sum of $15,775,252.67. The Board included in the assets making up this amount the stock standing in the name of the California Bank, both in the D. O. Mills National Bank and in the Mission State Bank; the first, the Mills National Bank stock, being computed as worth $625,546.30, and the second, the Mission State Bank stock, as worth $121,916.52.

Upon these valuations, the Board assessed the California Bank as a stockholder in the D. O. Mills National Bank and as a stockholder in the Mission State Bank for the shares of stock which it held in those banks, valuing each at the sum previously stated. Besides, the stockholders of the California National were assessed for the value of the assets of that bank, including in the amount

the full value of the shares of stock owned by the bank in the Mills National and Mission State Banks.

The controversy grows out of the asserted illegality of the two-fold tax levied on the assessments of the California Bank as a stockholder in the Mills National Bank and in the Mission State Bank. Its solution depends upon the effect of Rev. Stats., § 5219, the text of which is in the margin.[1]

Without considering some modifications made by the Act of February 10, 1868, c. 7, 15. Stat. 34, which are negligible for the purposes of the questions before us, the section is but the reproduction of a provision of § 41 of the Act of June 3, 1864, dealing with the organization of national banks. (13 Stat. 99, 112.) The forms of expression used in the section make it certain that in adopting it the legislative mind had in view the subject of how far the banking associations created were or should be made subject to state taxation, which presumably it was deemed necessary to deal with in view of the controversies growing out of the creation of the Bank of the United States and dealt with by decisions of this court. *McCulloch* v. *Maryland*, 4 Wheat. 316, 436; *Osborn* v. *United States Bank*, 9. Wheat. 738, 867; *Weston* v. *Charleston*, 2 Pet. 449.

---

[1] "Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

There is also no doubt from the section that it was intended to comprehensively control the subject with which it dealt and thus to furnish the exclusive rule governing state taxation as to the federal agencies created as provided in the section. All possibility of dispute to the contrary is foreclosed by the decisions of this court. *People* v. *Weaver,* 100 U. S. 539; *Mercantile Bank* v. *New York,* 121 U. S. 138, 154; *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664; *Covington* v. *First National Bank,* 198 U. S. 100:

Two provisions in apparent conflict were adopted. First, the absolute exclusion of power in the States to tax the banks, the national agencies created, so as to prevent all interference with their operations, the integrity of their assets, or the administrative governmental control over their affairs. Second, preservation of the taxing power of the several States so as to prevent any impairment thereof from arising from the existence of the national agencies created, to the end that the financial resources engaged in their development might not be withdrawn from the reach of state taxation, but on the contrary that every resource possessed by the banks as national agencies might in substance and effect remain liable to state taxation.

The first aim was attained by the non-recognition of any power whatever in the States to tax the federal agencies, the banks, except as to real estate specially provided for, and, therefore, the exclusion of all such powers. The second was reached by a recognition of the fact that, considered from the point of view of ultimate and beneficial interest, every available asset possessed or enjoyed by the banks would be owned by their stockholders and would be, therefore, reached by taxation of the stockholders as such. Full and express power on that subject was given, accompanied with a limitation preventing its exercise in a discriminatory manner, a power which again

from its very limitation was exclusive of other methods of taxation and left, therefore, no room for taxation of the federal agency or its instrumentalities or essential accessories, except as recognized by the provision in question.

Let us come to consider whether the taxation in question was sanctioned by the act of Congress as thus understood. We do so, first, from the point of view of the twofold tax which was based on the ownership by the California Bank of stock in the D. O. Mills National Bank, and, second, as to the taxes which resulted from the ownership by the California Bank of stock in the Mission State Bank.

In *Bank of Redemption* v. *Boston*, 125 U. S. 60, it was determined that the stock held by one national bank in another is governed by the power to tax stockholders given by the statute. Hence, the circumstance of the ownership of the stock by the California Bank in the D. O. Mills National Bank in no way deflects the operation of the statute. This being the case, as the taxation of the California Bank as a stockholder in the Mills Bank conformed to the grant of power to tax stockholders of national banks, it results that the assessment for taxation made upon that basis was within the state authority and was rightly decided so to be.

But the principle upon which this rests inevitably leads to the further conclusion, that the inclusion of the stock ownership of the California Bank in the Mills Bank as an asset of the California Bank for the purpose of taxing the stockholders of the latter bank was a disregard of the provision as to taxing stockholders fixed by the statute.

Indeed, it is apparent that the use of the power conferred by the statute to tax the California Bank as a stockholder in the Mills National Bank, and in addition to avail of such stock ownership for the purpose of taxing

the shareholders of the California Bank, was but to accept the statute on the one hand, and to exert on the other a power which could have no existence consistently with the statute. To say that the two taxes, the one levied on the bank as a stockholder in the Mills National Bank, and the other levied on the stockholders of the California Bank, were valid because a taxation of different persons, the California Bank on the one hand and the stockholders of the California Bank on the other, serves only to emphasize the plain disregard of the statute which would result from the enforcement of the taxes in question.

It is undoubted that the statute from the purely legal point of view, with the object of protecting the federal corporate agencies which it created from state burdens and securing the continued existence of such agencies despite the changing incidents of stock ownership, treated the banking corporations and their stockholders as different. But it is also undoubted that the statute for the purpose of preserving the state power of taxation, considering the subject from the point of view of ultimate beneficial interest, treated the stock interest, that is, the stockholder, and the bank as one and subject to one taxation by the methods which it provided.

Again, when the purposes of the statute are taken into view, the conclusion cannot be escaped that the transmutation of the stock interest of the California in the Mills Bank, into an asset of the California Bank subject to be taxed for the purpose of reaching its stockholders, is to overthrow the very fundamental ground upon which the taxation of stockholders must rest.

We do not stop to point out the double burden resulting from the taxation of the same value twice which the assessment manifested, as to do so could add no cogency to the violation of the one power to tax by the one prescribed method conferred by the statute and which was the sole measure of the state authority.

Coming to consider the tax on the California National Bank as a stockholder in the Mission State Bank, different considerations are controlling, since the provisions of the statute and the ruling in the *Bank of Redemption Case, supra,* both in letter and spirit apply only to stock ownership by a national bank in another national bank. It therefore follows that as the California National Bank was subject to state taxation as a federal agency only to the extent authorized by the statute, the taxation of that bank as a stockholder 'in the Mission State Bank was without the scope of the statute and beyond the power which it conferred.

But while this is true, it also follows that as the stock in the Mission Bank belonged to the California Bank and was part of its general assets embraced by the comprehensive power conferred to tax such assets in the absence of some provision of the statute to the contrary, which, as we have seen, was the case with regard to the stock held in the D. O. Mills National Bank, the assessment of the stock in the Mission Bank as an asset of the California Bank against its stockholders was within the scope of the grant given by the statute and was, therefore, valid.

From what we have said, it follows that the court below erred in refusing to order the refunding of the sum paid for the taxes levied on the assessment made against the stockholders of the California Bank for the value of the stock held by that bank in the D. O. Mills National Bank, and which had been assessed against the California Bank as a stockholder in the Mills Bank; and further erred in so far as it refused to decree a refund of the amount paid for the tax levied on the California Bank as the result of the assessment on that bank as a stockholder in the Mission State Bank. In these particulars, therefore, its decree must be, and is reversed. Our order, therefore, is

*Reverse and remand for further proceedings not inconsistent with this opinion.*

Mr. Justice Pitney, dissenting.

Pursuant to the constitution and laws of California, the plaintiff in error, a national banking association located in that State, was required to pay the following three taxes for the year 1915:

(a) A tax upon the valuation of the shares of its own stock, assessed against the bank at its own request instead of being assessed in the names of its individual stockholders. Its shares are 85,000 in number, of the par value of $100 each ($8,500,000 in all), and were valued for taxation at the sum of $15,775,252.67; a valuation which took into account all the assets of plaintiff in error except the assessed value of its real estate (excluded pursuant to the provisions of the state constitution). Included in the estimate were the sum of $625,546.30, the valuation of 2,501 shares of stock of the Mills National Bank held by plaintiff in error, and the sum of $121,916.52, for the value of 1,001 shares of the Mission Bank (a state bank), likewise held by plaintiff in error. It appears that the Bank of California prior to February 5, 1910, was a state bank, and on that date was converted into a national association; and, being at that time a stockholder of the two other banks, was permitted, under § 5154, Rev. Stats., as it then stood, to continue to be such stockholder after becoming a national bank.

(b) A tax assessed directly against plaintiff in error as a stockholder of the Mills National, based upon the valuation already mentioned of 2,501 shares.

(c) A tax assessed directly against plaintiff in error as a stockholder in the Mission (state) Bank, based upon the above mentioned valuation of its 1,001 shares in that bank.

In an action brought by the California National against Richardson as state treasurer to recover a part of the taxes thus paid, the Supreme Court of the State, following its previous decision in *Bank of California* v. *Roberts*, 173

California, 398, denied recovery, and the case is brought
here upon the ground that the state constitution and
laws, in conformity to which the taxes were assessed, are
repugnant to § 5219 of the Revised Statutes of the United
States.[1]

This court now holds that while the California National
was taxable as a stockholder in the Mills National Bank
(*Bank of Redemption* v. *Boston,* 125 U. S. 60), the other
taxes imposed against plaintiff in error were repugnant to
§ 5219 in two respects: (1) In that the valuation of the
Mills National shares ought to have been deducted from
the estimate of the valuation of the California National
shares in making an assessment against the stockholders
of the latter bank; and (2) in that plaintiff in error, as a
national bank, was not taxable at all as a stockholder in
the state bank, and that the tax last mentioned above was
altogether erroneous.

Upon the last point I understand the case to be con-
trolled by the decision of this court in *Owensboro National
Bank* v. *Owensboro,* 173 U. S. 664, where it was held that
§ 5219 had the effect of exempting not only the operations
and franchises but the property of the national banks from

---

[1] Sec. 5219. Nothing herein shall prevent all the shares in any
association from being included in the valuation of the personal prop-
erty of the owner or holder of such shares, in assessing taxes imposed by
authority of the State within which the association is located; but the
legislature of each State may determine and direct the manner and
place of taxing all the shares of national banking associations located
within the State, subject only to the two restrictions, that the taxation
shall not be at a greater rate than is assessed upon other moneyed
capital in the hands of individual citizens of such State, and that the
shares of any national banking association owned by non-residents of
any State shall be taxed in the city or town where the bank is located,
and not elsewhere. Nothing herein shall be construed to exempt the
real property of associations from either State, county, or municipal
taxes, to the same extent, according to its value, as other real property
is taxed.

state taxation, except as to their real estate. There are weighty considerations to the contrary, which seem not to have been called to the attention of the court in that case—certainly are not adverted to in the opinion—but it would serve no useful purpose to bring them into the present discussion. Therefore I take it to be settled that under § 5219 a national bank may not be taxed by a State with respect to its ownership of shares in another corporation except shares in another national·bank.

The Supreme Court of California, in the *Roberts Case,* 173 California, 398, 405, held that since it was decided by this court in the case of *Bank of Redemption* v. *Boston* that § 5219 permits the taxation of the shares of a national bank in the hands of another national bank, a different rule could not be applied to the taxation of shares in a state bank owned by a national bank without violating that provision of § 5219 which prohibits the taxation of national bank shares at a greater rate than is assessed upon other moneyed capital. But this view seems to me untenable; it mistakes an exemption accorded to a particular holder of other moneyed capital for a restriction upon the rate of taxation that may be assessed upon other moneyed capital as a class of property. As we held in *Amoskeag Savings Bank* v. *Purdy,* 231 U. S. 373, 393, the language of § 5219 "prohibits discrimination against shareholders in national banks and in favor of the shareholders of competing institutions, but it does not require that the scheme of taxation shall be so arranged that the burden shall fall upon each and every shareholder alike, without distinction arising from circumstances personal to the individual." The nontaxability of state bank shares in the hands of a national bank is attributable to the character of the national bank as a taxpayer, not to the quality of the state bank shares as an object of taxation.

And of course I agree that the California National was

taxable as a stockholder in the Mills National; it having been determined in *Bank of Redemption* v. *Boston*, 125 U. S. 60, 70, that § 5219 permits the taxation of a national bank owning shares of the capital stock of another national bank, by reason of that ownership, on the same footing with all other shareholders.

This brings us to the point of divergence.

I dissent from the conclusion that the taxation imposed directly upon the California National by reason of its ownership of Mills National shares entitled the stockholders of the former bank to have the estimated value of the Mills shares deducted from the estimate of their California shares.

I find no suggestion of a right to such deduction in the language of § 5219. It permits the inclusion of "all the shares . . . in the valuation of the personal property of the owner or holder of such shares," and leaves it to the legislature of each State to determine the manner and place of taxing them, "subject only to the two restrictions" which are particularly mentioned; and therefore, by necessary implication, free from all other restrictions.

The opinion seems to adopt the view that to treat the Mills National shares as assets of the California National Bank amounts to imposing a "twofold tax," a "double burden" or "two taxes" upon a single property interest. But if there are two taxes it is only because there are two banks, the stock in each of which is valued separately because the ownership is separate and distinct.

It is said that § 5219 regards the ultimate beneficial interest and treats the interest of the stockholder and that of the bank as one. I cannot accept this view, for several reasons in addition to the implied exclusion of restrictions other than those expressly mentioned in the section.

In the first place, the stockholder and the bank are entirely different entities, not merely in form but in sub-

stance; and this ought to be sufficient to rebut any inference that would rest upon an assumed identity in order to raise a limitation upon the already moderate scope of the scheme of taxation expressly prescribed.

In the second place, the property interest of the stockholder is, in a most substantial sense, different from that of the bank.  The bank, if taxable with respect to its property, would be taxable upon all of its assets, saving any that might be expressly exempted.  But the stockholders are in no proper sense the owners of the entire assets of the bank.  Their interest, so far as they have any interest in the assets as such, is only in the residue that remains after payment of all outstanding liabilities.  This is capable of enjoyment in possession only in the rare event of a winding-up and liquidation of the bank's affairs.  Short of this, and as is true in the particular case of the California Bank, the interest of the stockholders is almost the opposite of a property interest in the assets themselves; it being confined to a right to have those assets employed in the current operations of a going concern of which they are only part proprietors, with the right to participate at proper intervals in the gains derived therefrom.  Hence, while "book-value"—that is, the excess of assets over outstanding liabilities—may be laid hold of, as it appears to have been laid hold of in this case, as a convenient mode of estimating the value of the stock interest, not only is it a matter of familiar knowledge that such an estimate is a mere approximation, but it is entirely clear that both in law and in the common experience of mankind the beneficial interest of the stockholder in the concerns of the bank is very substantially different from the beneficial interest of the bank in its assets.

Thirdly, the distinction has been constantly recognized in the decisions of this court ever since the earliest establishment of the national banks.  The court having in

the year 1862 decided that a state tax, imposed upon a
bank according to the valuation of its capital and surplus
as upon the property of individual citizens, was invalid
in so far as it was based upon an investment in the stocks,
bonds, and securities of the United States themselves
exempt from taxation by the State (*Bank of Commerce* v.
*New York City*, 2 Black, 620); and having held two years
later that the same rule must be applied to a state tax
imposed against a bank under another statute which
made banks liable to "taxation on a valuation equal to
the amount of their capital stock paid in or secured to
be paid in, and their surplus earnings," etc., (*Bank Tax
Case*, 2 Wall. 200); the question was raised in the year
1865, in *Van Allen* v. *The Assessors*, 3 Wall. 573, 584,
etc., whether under § 41 of the National Bank Act of
June 3, 1864, c. 106, 13 Stat. 99, 112, from which the
present § 5219, Rev. Stats., is derived, a State possessed
the power to authorize the taxation of shares of national
banks in the hands of stockholders where the capital
was wholly invested in stock and bonds of the United
States. *Bank of Commerce* v. *New York City*, 2 Black,
620, and *Bank Tax Case*, 2 Wall. 200, were referred to
as calling for a negative answer; but the court sustained
the tax upon the ground of the very distinction between
the stockholders and the bank that is now under con-
sideration, the language of the opinion being (pp. 583,
584): "The tax on the shares is not a tax on the capital
of the bank. The corporation is the legal owner of all
the property of the bank, real and personal; and within
the powers conferred upon it by the charter, and for the
purposes for which it was created, can deal with the
corporate property as absolutely as a private individual
can deal with his own. This is familiar law, and will
be found in every work that may be opened on the subject
of corporations. . . . The interest of the share-
holder entitles him to participate in the net profits earned

476.            PITNEY, J., dissenting.

by the bank in the employment of its capital, during
the existence of its charter, in proportion to the number
of his shares; and, upon its dissolution or termination,
to his proportion of the property that may remain of
the corporation after the payment of its debts. This is a
distinct independent interest or property, held by the
shareholder like any other property that may belong to
him. Now, it is this interest which the act of Congress
has left subject to taxation by the States, under the
limitations prescribed."

In the same case, the court found in the context of the
National Bank Act most cogent reasons for holding that
Congress intended to permit the States to tax the entire
interest of the stockholder, without regard to the character
of the investments held by the bank. After referring to
certain of the provisions of the act respecting the amount
of the capital stock, its division into shares, and the re-
sponsibility of the shareholders for the debts of the bank,
the opinion proceeds as follows (pp. 587–588): "In view
of these several provisions, in which the term shares, and
shareholders, are mentioned, and the clear and obvious
meaning of the term in the connection in which it is
found, namely, the whole of the interest in the shares
and of the shareholders; when the statute provides, that
nothing in this act shall be construed to prevent *all the
shares* in any of the said associations, &c., from being
included in the valuation of the personal property of any
person or corporation in the assessment of taxes imposed
by state authority, &c., can there be a doubt but that
the term 'shares,' as used in this connection, means the
same interest as when used in the other portions of the
act? Take, for examples, the use of the term in the cer-
tificate of the numbers of shares in the articles of associa-
tion, in the division of the capital stock into shares of
one hundred dollars each; in the personal liability clause,
which subjects the shareholder to an amount, and, in

addition, to the amount invested in such shares; in the election of directors, and in deciding all questions at meetings of the stockholders, each share is entitled to one vote; in regulations of the payments of the shares subscribed; and, finally, in the list of shares kept for the inspection of the State assessors. In all these instances, it is manifest that the term as used means the entire interest of the shareholder; and it would be singular, if in the use of the term in the connection of State taxation, Congress intended a totally different meaning, without any indication of such intent. This is an answer to the argument that the *term*, as used here, means only the interest of the shareholder as representing the portion of the capital, if any, not, invested in the bonds of the government, and that the State assessors must institute an inquiry into the investment of the capital of the bank, and ascertain what portion is invested in these bonds, and make a discrimination in the assessment of the shares. If Congress had intended any such discrimination, it would have been an easy matter to have said so. Certainly, so grave and important a change in the use of this term, if so intended, would not have been left to judicial construction. Upon the whole, after the maturest consideration which we have been able to give to this case, we are satisfied that the States possess the power to tax the whole of the interest of the shareholder in the shares held by him in these associations, within the limit prescribed by the act authorizing their organization."

This distinction between bank and shareholder has been recognized consistently in the decisions of this court from that time until the present. It will not be necessary to analyze the cases, since the principal ones (*People* v. *Commissioners*, 4 Wall. 244, 258; *National Bank* v. *Commonwealth*, 9 Wall. 353, 359; *Farrington* v. *Tennessee*, 95 U. S. 679, 687; *Tennessee* v. *Whitworth*, 117 U. S. 129,

476.                    PITNEY, J., dissenting.

136; *Bank of Commerce* v. *Tennessee*, 161 U. S. 134, 146; *New Orleans* v. *Citizens' Bank*, 167 U. S. 371, 402;) were summarized and quoted from in the opinion of the court in *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 677–682, where the distinction was employed to demon-. strate the substantial want of equivalency either in law or in fact between a tax on the franchise or property of the bank, such as had been imposed by the State in that case, and a tax upon the shares of stock in the names of the shareholders, permitted by § 5219, Rev. Stats.

The solid basis of the distinction may be further emphasized by considering the practical effect of according to the stockholders of the California Bank, in the estimation of the value of their shares for the purpose of taxation, a deduction of the entire value of the stock held by this bank in the Mills National. This value, according to the admitted facts, is $625,546.30, which is about 4 per cent. of $15,775,252.67, the entire estimated value of the 85,000 shares of California National stock (excluding real estate from the computation). It is incorrect to take the latter sum as the value of all the assets of the California National. There is nothing in the record to show the value of its entire assets; but as the case comes before us as on a demurrer to plaintiff in error's own pleading, and since the $15,775,252.67 represents but the excess of its assets over its outstanding liabilities, it is reasonable to assume that the entire assets are much greater; it being evident that there must be assets to counterbalance all outstanding liabilities, including especially the amounts due to depositors. Let us take, for illustration, the very moderate assumption that plaintiff in error's total assets were four times as much as its capital and surplus or, say, $63,000,000.[1] Of this amount,

---

[1] According to its Report of Resources and Liabilities at close of business September 2, 1915, plaintiff in error had total resources of $67,396,982. Report of Comptroller of Currency, 1915, vol. 2, p. 585.

the valuation of the Mills National stock is less than one per cent. In other words, applying the theory of the prevailing opinion, the fact that one per cent. of its total assets is in the form of shares in another national bank entitles its own stockholders to an abatement amounting to four times that percentage, or about 4 per cent., from the valuation of their stock-holding interest in the plaintiff in error's bank. And it is easy to see that, upon the same theory, if the shares held by one national bank in another were equal in value to the aggregate of its own shares, although constituting but a small fraction of its entire assets, its shareholders would escape taxation altogether, although participating in the profits of two banking institutions.

As we have seen, the decisions of this court establish that under § 5219 the holder of shares in a national bank is not entitled to have the estimate of their taxable value reduced by reason of the fact that the capital and surplus of the bank are invested in securities that are exempted from state taxation. It also is clear that while the section in terms permits the real property of the bank to be taxed against it, this does not entitle the shareholder to an allowance from the assessed value of his shares by reason of the fact that the bank is thus taxed. It is true that many of the States, when authorizing the taxation of real estate against the bank, make an allowance for this by deducting the value thus taxed when computing the amount at which the shares shall be taxed; but this is not because of any requirement in the federal statute. In *Commercial Bank* v. *Chambers*, 182 U. S. 556, 561, this court expressly so held with respect to a claim for a deduction from the value of national bank shares because of real estate owned by the bank situate outside of the taxing State. In *People's National Bank* v. *Marye*, 107 Fed. Rep. 570, 579, it was held that § 5219 contemplates that the tax on real estate may be imposed independently

of the tax upon the share of the stockholder (affirmed upon another ground, 191 U. S. 272). And in *Amoskeag Savings Bank* v. *Purdy*, 231 U. S. 373, we sustained a tax imposed upon a shareholder under a statute that, while not exempting the real estate of the bank situate in the same State, allowed no deduction of its value in the computation of the taxable value of the shares.

It seems to me that to allow a deduction from the taxable value of national bank shares because the bank happens to hold stock in another national bank is not only contrary to the clear intent of § 5219, but is inconsistent with all previous decisions of this court bearing upon the point, especially those that have denied a similar deduction because of tax-exempt securities held by the bank, or because of real estate taxed against it.

MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE concur in this dissent.