**FIRST NAT. BANK IN ST. LOUIS et al. v. BUDER, Assessor, et al.**

(District Court, E. D. Missouri, E. D. October 2, 1925.)

No. 6949.

1. **Taxation ⚖️11—State taxation of shares in national bank, pursuant to authority of federal statute, held valid, prior to amendment of federal statute.**

Prior to amendment on March 4, 1923, of Rev. St. § 5219 (Comp. St. Supp. 1925, § 9784), provision of Rev. St. Mo. 1919, § 12775, taxing shares in national banks, pursuant to authority granted by section 5219, was valid and legal.

2. **Taxation ⚖️11—Act of Congress held to permit state taxation of income from national bank stock.**

Act Cong. March 4, 1923, amending Rev. St. § 5219 (Comp. St. Supp. 1925, § 9784), permitted state to tax income from dividends of national bank stock as one of the electively permissible methods of taxation therein prescribed, and validated such taxation from date of amendment.

3. **Evidence ⚖️33—Court may take judicial notice of action or lack of action of Legislature and length and time of sessions.**

Court may take judicial notice of action or lack of action by Legislature, and of length and time of its sessions.

4. **Taxation ⚖️113—Where two state statutes, taxing national bank stock and income thereof, are in operation concurrently, only one of which is permitted under federal law, neither statute is operative, and subsequent act relating thereto is invalid.**

Where both Rev. St. Mo. 1919, § 12775, taxing shares of national banks, and Missouri Income Tax Act of 1917, taxing incomes of national bank stock, were equally valid and in operation concurrently, only one of which was permitted to be operative, under paramount provisions of Rev. St. U. S. § 5219, as amended by Act March 4, 1923 (Comp. St. Supp. 1925, § 9784), neither statute is operative, and Act Mo. April 18, 1925 (Laws 1925, p. 372), electing to tax national bank stock under one of permissible methods and to validate previous taxes, was retroactive and invalid, in view of Const. Mo. 1875, art. 2, § 15.

5. **Taxation ⚖️25—Legislature may assess property omitted in past years, if statute during such years permitted it.**

Legislature has power to assess and collect tax on property omitted from assessment in past years, where during such past years there exists a statute by which such property may be assessed, but it cannot tax property for past years which was not, by existing statute, taxable for such years.

6. **Taxation ⚖️113—Election made April 18, 1925, under amendment passed by Congress March 4, 1923, held not to be as soon as Legislature could act.**

Where Legislature was in session when amendment to Rev. St. § 5219, was passed on March 4, 1923 (Comp. St. Supp. 1925, § 9784), and remained in session for 22 days, an election on April 18, 1925 (Laws 1925, p. 372), to tax national bank stock in one of permissible modes provided by federal amendment cannot be said to have been made as soon as Legislature could act, where Missouri Constitution provides that a bill may become a law 6 days after it is introduced in Legislature, and Legislature might have remained in session until terms of members expired.

7. **Courts ⚖️365—Supreme Court of state cannot determine effect of local statute or decision on statute of United States, so as to be binding on federal court.**

Supreme Court of state, as to its own statutory and organic laws, may rule so as to be conclusively binding on federal court; but it cannot determine effect of a local law_or decision, where question is as to effect of such law on statute of United States, so as to be binding on a federal court.

8. **Courts ⚖️97(5)—Tax on income regarded as tax on property under federal code.**

A tax on income is a tax on property out of which such income accrues, under federal rule, so that, as respects statute of United States, a state income tax must be regarded as a tax on property, regardless of view taken by local courts.

9. **Taxation ⚖️11—Tax on shares of national bank precludes tax on income from dividends of shares, under federal statute prohibiting two taxes on national banks.**

Under power of Congress to grant authority to state to tax national banks on condition, such conditions are conditions precedent; and where Congress has stated that no two taxes shall be laid on national banks, a tax on shares of national banks precludes a tax on income from dividends of such shares, regardless of whether tax on income is regarded as a tax on property or not.

**10. Taxation ⟨key⟩11—Statute authorizing states to tax national bank shares held constitutional.**

Rev. St. § 5219 (Comp. St. § 9784), authorizing states to tax shares in national banks, is not unconstitutional, as interfering with power of states to levy and collect taxes for their own uses, since no power exists in states to tax national banks, except as permitted by Congress, which permission may be granted on condition.

**11. Taxation ⟨key⟩11—Prohibition on states from taxing income from dividends of national bank stock held not unconstitutional.**

Under power of Congress to authorize states to tax shares of national banks, any provision forbidding taxing of income of individuals, derived from stock of national banks, would be regarded as a condition precedent to exercise of grant of power otherwise wholly forbidden to states, and is not unconstitutional as an invasion of inherent rights of sovereign states.

**12. Taxation ⟨key⟩11—Proceeding by state to tax shares of national banks, and to tax income from such shares, held not to be an election to tax under first method.**

Where state proceeded, under Rev. St. Mo. 1919, § 12775, to assess and collect tax on shares of national banks, and thereafter continued to assess taxes on income derived from dividends on such shares, which taxes were collected before taxes on shares themselves, no election was shown to proceed, under section 12775, so as to conform to amendment of March 4, 1923, to Rev. St. § 5219 (Comp. St. Supp. 1925, § 9784), requiring states to choose one of three methods of taxing shares of national banks, which shall be in lieu of others, since no election can be predicated upon doing both of two electively permissible acts, merely because one of those acts accidentally happened to be first done.

**13. Taxation ⟨key⟩219—National bank held not to be within meaning of act exempting income derived from "public utilities," performing functions of national government, from taxation; "public use."**

Provision of Rev. St. Mo. 1919, § 13113, exempting from taxation income derived from public utilities, performing functions of national government, does not include national bank, which is not a "public utility" in technical sense used by act, and defined by section 10411 as including common carriers, gas, electrical, telephone, telegraph, water, heat, or refrigerating corporations, and which term is synonymous with "public use."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Use; Second Series, Public Utility.]

**14. Taxation ⟨key⟩219—Acts of Legislature held to have construed Income Tax Law as not to exempt Income from dividends of national bank stock.**

Uniform construction by state of Income Tax Law Mo. 1917, as including income from national bank stock, together with Act April 18, 1925 (Laws Mo. 1925, p. 372), electing to tax national bank stock, under provisions of Rev. St. Mo. 1919, § 12775, declaring tax on income from such stock void, is regarded as a legislative construction that provisions of section 13113, exempting from taxation income derived from public utilities performing function of national government did not exempt income from dividends of national bank stock.

In Equity. Action by the First National Bank in St. Louis and others to enjoin William Buder, Assessor, and others, from collecting from plaintiffs certain taxes. Permanent injunction granted.

Bryan, Williams & Cave and Jones, Hocker, Sullivan & Angert, all of St. Louis, Mo., for plaintiffs.

James T. Blair and Oliver Senti, City Counselor, both of St. Louis, Mo., Robert W. Otto, Atty. Gen., of Missouri, James A. Potter, Sp. Asst. Atty. Gen., and Foristel, Mudd, Hezel & Habenicht, of St. Louis, Mo., for defendants.

FARIS, District Judge. This is an action in equity to enjoin defendants from collecting from plaintiffs certain state, city, and school taxes for the year 1924, which were imposed or assessed upon the shares of stock owned by the individual stockholders of plaintiff bank, as of June 1, 1923, upon the ground that the amendment by Congress, on March 4, 1923, of section 5219, R. S. (Comp. St. Supp. 1925, § 9784), limited and restricted the right of the state of Missouri, as to the levy and collection of taxes on shares of stock in national banks, in such wise as to repeal all existing laws of Missouri providing for such levy and collection. This contention is, as counsel for plaintiffs admit in their briefs, bottomed on highly technical grounds and deals with a situation which is unfortunate, unique, and anomalous.

Section 5219, supra, has been in force since the year 1868, and section 12775, R. S. of Mo. of 1919, has been in force in Missouri since 1889. The former section provided that shares of stock in national banks might be taxed by the states as the property of the several shareholders. Section 12775, R. S. of Mo. of 1919, provided for such taxation, in all respects in accordance with the permissive provisions of section 5219, supra.

[1] It must be and is conceded that, till the amendment by the Congress of section 5219, supra, on the 4th day of March, 1923, the express statutory method in Missouri of taxing shares in national banks, particularly the provision of section 12775, supra, was entirely valid and legal. But, as already

said, on March 4, 1923, the Congress amended said section 5219, by providing, inter alia, that:

"The Legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may tax said shares, or include dividends derived therefrom in the taxable income of an owner or holder thereof, or tax the income of such associations: Provided, the following conditions are complied with: 1. (a) The imposition by said state of any one of the above three forms of taxation shall be in lieu of the others."

It will be borne in mind that the first of the enumerated permissible methods of taxation, as set out in the amendment of section 5219, supra, had, since 1889, been followed in Missouri, perforce the lawful provisions of section 12775, R. S. of Mo. of 1919. This latter section is, as already forecast, a special law providing for the manner, place, and method of taxing shares of stock in banks, including national banks. But in 1917 the Legislature of Missouri passed an act, known as the Income Tax Act (Laws 1917, p. 524), which, among other things, provided that:

"There shall be levied * * * upon the entire net income received * * * from all sources by every individual * * * resident of this state a tax of one-half of one per cent. upon such income."

This tax has since been increased by an amendment, made in 1919 (Laws 1919, p. 718), to 1½%; but this cuts no figure in the merits of the controversy.

If so it be that the above sweeping provision of the local Income Tax Act included, in the light of other provisions of that act, income from dividends accruing from shares held in national banks, the situation existing on and after the 4th day of March, 1923, was that by the laws of Missouri two of the forms of taxation set out in the amendment to section 5219, supra, were in full force and effect in this state. Whether both of them were valid or not, when they were passed, is not important. I am of the opinion that, under the preclusive provisions of section 5219, as seemingly construed by the Supreme Court of the United States, in the case of Bank of Gulfport v. Adams, 258 U. S. 362, 42 S. Ct. 323, 66 L. Ed. 661, a state tax on income accruing from dividends from stock held in national banks was not valid, because such form of taxation was not mentioned in the federal statute, and because it

has been said that mere silence on the part of Congress would absolutely forbid taxation of such banks, or of their shares. Bank v. Richmond (C. C.) 39 F. 309.

[2] But the situation now presented renders any ruling on this point unnecessary; for, whether the state of Missouri could lawfully impose a tax on income from such dividends or not, before the amendment to section 5219, supra, this amendment permitted the state to do so, as one of the electively permissible methods of taxation. Therefore, the moment the amendment to section 5219, supra, became effective, the taxation of incomes from dividends on stock in national banks, ceteris paribus, became valid. Lionberger v. Rowse, 43 Mo. 67; In re Rahrer, 140 U. S. 545, 11 S. Ct. 865, 35 L. Ed. 572. So the contention of initial lack of validity of the tax on such income need not further be considered. Therefore, as plaintiffs contend, since two of the electively permissible modes of taxation were by statutes in force in Missouri, and since by the amendment of March 4, 1923, but one of these was lawful after the passage of the above amendment, the sum of the situation is that from March 4, 1923, till 90 days after the adjournment of the legislative session of 1925, there has been no valid law in this state whereby national banks, or their stocks, or income from dividends on such stocks, can be taxed. One of these statutes canceled the other till an election was made as to which one should be in force, because both were in force equally, but one only, because of the effect of the paramount law, could be valid, and this one could not be valid till an election was made by the Legislature. Thus the contentions of the plaintiffs.

[3] The Legislature of Missouri took no affirmative part, subsequent to the amendment of March 4, 1923, to bring about this anomalous situation. It was in session for 22 days after Congress passed the act amending section 5219, supra. Its sessions are biennial, and it meets only in the odd-numbered years. These four matters I notice judicially.

On the 18th day of April, 1925 (Laws 1925, p. 372), it passed an act affirmatively electing to tax national banks, in that one of the permissibly elective ways provided already by section 12775, supra. This act of 1925 also purported to validate the action of the state tax commission of Missouri in making a similar election, but erroneously recited that such action of the tax commission was had in 1923, when in fact it was not had till 1924, as is shown by the stipula-

tion of facts herein, upon which, together with the allegations of the bill and the answer, this case is submitted on the merits.

Many reasons are urged by the defendants why the contentions of the plaintiffs should not be sustained. Among these are: (a) That the Act of April 18, 1925, made an election at the first opportunity afforded the Legislature, and that this act validated the assessments of taxes against the plaintiffs for the year 1923, here in dispute; (b) that the Income Tax Act of Missouri is not a tax on property; (c) that section 5219, supra, is since it was amended, and has always been, unconstitutional, for that it is an unwarranted invasion by Congress of the sovereign power of the states of the Union to levy and collect taxes on property within such states; (d) that the officers, who are authorized by the laws of the state of Missouri to assess and collect taxes, made an election as of June 1, 1923, to tax the shares of stock in national banks pursuant to the provisions of section 12775, supra, and that subsequent acts of such officers, through which taxes were assessed and collected upon income derived from dividends accruing from shares in national banks, were and are illegal and void; and (e) that the Income Tax Act of Missouri now exempts, and it has from the beginning exempted, from taxation all income accruing from dividends on national bank stock.

[4] Other reasons may be found in the answer and in the many briefs filed; but, since none of these presents defenses which are in my opinion at all debatable, no reference to them need be made. The controlling facts in the case are simple and conceded. The ultimate situation, to wit, that there were on the statute books of the state of Missouri on the 4th day of March, 1923 (when the alleged paramount provisions of section 5219, supra, as amended took effect), two statutes of Missouri ostensibly taxing, or purporting to tax, national banks, in two of the electively permissible ways allowed by said section 5219, last supra, must be conceded. The ordinary legal effect of such a situation (that is to say, that when there are two equally valid statutes of the state of Missouri in operation concurrently, and only one of these is permitted to be operative under the alleged paramount provisions of section 5219, supra, as amended, neither statute is operative) is scarcely controverted by the defendants.

The defendants rely upon the matters of defense already set out, in order to obviate the effect contended for by plaintiffs. So, if section 5219, supra, as amended, is valid and is the paramount law, and if there were two valid taxing statutes of Missouri in operation, subsequent to March 4, 1923, one of which statutes the paramount law forbade, and if there has been no cure wrought in this situation by any subsequent election by the officers of the state, or by the action of the Legislature thereof, the legal effect of this situation, as urged by plaintiffs, is, I repeat, scarcely, if at all, denied by defendants. Abstractly, the contention of plaintiffs is probably incontrovertible. Sutherland on Stat. Con. 349.

It may be conceded, arguendo, that the Act of April 18, 1925, had the effect of a legislative election to follow the provisions of section 12775, R. S. of Mo. of 1919, in taxing national bank stock after the effective date of that act. But this act also undertook to validate prior assessments for the years 1923 and 1924, as also to validate the action taken by the Missouri tax commission in August, 1924 (erroneously said in the act to have been had in August, 1923), whereby the tax commission undertook to make an election to proceed under section 12775, supra.

Obviously, then, the sum of the situation is that, if perforce the existence of two equally operative statutes, only one of which could be effective, there was in 1923 no law by which stock in national banks could be lawfully taxed in this state, any law passed in 1925, purporting to validate taxes for preceding years, was retroactive and constitutionally invalid. Section 15, art. 2, Const. of Mo. of 1875. If, on the other hand, there existed a valid law to levy and collect taxes from such banks for the years 1923 and 1924, the Act of April 18, 1925, was a futile and useless thing.

[5] The Legislature of Missouri may pass a statute providing for the assessment and collection of taxes on property omitted from assessment in past years, where there exists during such past years a statute by which such property might have been assessed; but it cannot pass a law taxing for past years property which was not by an existing statute taxable for such years. I think the latter proposition is so clear as to render unnecessary any further exposition or citation of authority.

[6] But it is urged that the Legislature made its election as soon as it could do so; that is to say, in 1925. This is scarcely accurate. The Legislature was in session when the amendment to section 5219, supra, was passed and remained in session for 22 days

thereafter. In due course, under the constitutional provisions of Missouri, a bill may be offered and become a law in this state in six days after it is introduced into either chamber. Since 22 days of its actual session remained, it could by a timely statute have elected to follow the provisions of section 12775, supra, at the 1923 legislative session. But even 22 days were not the limit. It might have remained in session under the Constitution of Missouri for any number of days in excess of 22 that it saw fit. There is no constitutional limit to the length of the sessions of the Missouri Legislature, save that connoted by the fact that the terms of all of the members of the lower house expire in measurably two years after they are inducted into office. Clearly there was ample time to pass an act of election at the 1923 session, but this was not done.

It is said that, since the Supreme Court of Missouri, in construing the local Income Tax Act, held that such tax is not a tax on property from which such income flows, it follows that a tax on income derived from dividends on stock in a national bank is not a tax on such banks or on the stock therein. My views on the basic proposition in this contention are set forth in a dissenting opinion in the case of Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S. W. 196. But of course such views would not bind me here, if the matter were one in which the Supreme Court of Missouri could speak authoritatively, as it is not.

[7, 8] As to its own statutory and organic laws, the Supreme Court of Missouri may rule in such wise as to be conclusively binding on a federal court; but it may not say, as is here contended by defendants, what effect a local statute or decision shall have (Pryor v. Williams, 254 U. S. 43, 41 S. Ct. 36, 65 L. Ed. 120), when, as here, the question is as to the effect of such a local law or decision on a statute of the United States. If the Income Tax Act of Missouri shall have the effect to put a tax on property, within the purview of the federal decisions on this subject, then the tax in question is a tax on property, regardless of the view which may have been taken by the local state courts as to the nature and effect of such tax. I think it is clear, both upon reason and authority, that a tax upon income is a tax upon the property out of which such income accrued; at least, this is the federal rule (Pollock v. Farmers', etc., Co., 157 U. S. loc. cit. 596, 15 S. Ct. 673, 39 L. Ed. 759), by which alone I am bound here.

[9] Moreover (as I next discuss), if so it

be that Congress has the right to grant or withhold to the states, as it sees fit, the authority to tax national banks, and that such right may be granted on conditions, then such conditions are conditions precedent, and so it would make no difference whether an income tax on dividends from national bank stock is, or is not, a tax on property, or a tax on such stock. In such event, Congress has simply said that no two taxes shall be laid on national banks; if one shall be put on the value of the shares of stock, then none shall be put on the income from such stock, and so the matter becomes one of mere nomenclature and cuts no further figure in the case.

[10] An able and most plausible argument is made upon the contention that section 5219, supra, is unconstitutional, for that Congress has no power to delimit, or meddle with, the several sovereign states touching their inherent power to levy and collect taxes for their own several uses. But I cannot read the cases of McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, Osborn v. Bank of U. S., 9 Wheat. 738, 6 L. Ed. 204, and Weston v. Charleston, 2 Pet. 449, 7 L. Ed. 481, in any other light than that no power exists in the states to tax national banks at all, except and until Congress shall so permit, and that such permission, when granted, may be hedged about with conditions, which conditions must be met by the states before they may tax these banks. Bank of Gulfport v. Adams, 258 U. S. 362, 42 S. Ct. 323, 66 L. Ed. 661; Des Moines Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; Bank of California v. Richardson, 248 U. S. 476, 39 S. Ct. 165, 63 L. Ed. 372. It is perhaps true that in none of the above cases was the constitutional validity of section 5219, supra, directly held in judgment. But in view of the language used in the case of Bank of Gulfport v. Adams, supra, to wit, that "section 5219, Revised Statutes, prescribes the full measure of the power of the several states to impose taxes upon national banking associations or their stockholders; any assessment not in conformity therewith is unauthorized and invalid"—the situation seems to present the condition already forecast; that is to say, that Congress, having the right to forbid taxation, even by its failure to pass any law at all on the subject, had the right to confer this power on such conditions as it saw fit. If the right existed in the several states to levy and collect a tax on national banking associations, regardless of the consent of Congress, there would be no

escape from the proposition that Congress may not by legislation invade a sovereign state, and lay down rules to govern such state as to the manner and place of levying, assessing and collecting such taxes. But the cases hold that no such right exists; that there must be affirmative action by Congress, permitting taxation, before a state may tax at all. Des Moines National Bank v. Fairweather, supra.

[11] Of course, two very plausible views may be held upon this situation. The first is that the restrictions and limitations are conditions precedent, which Congress had the power to attach to the permission granted; the second is that, Congress having given its consent to tax, the annexing of conditions to such consent is unconstitutional, where, as here, the conditions annexed are rank invasions of an inherent right of sovereign states. Abstractly this invasion is too obvious for argument, so far as concerns the right of Congress to forbid a state from taxing the income of a citizen, merely because such income accrued from dividends from stock in a national bank. Only, if at all, may such a provision be upheld, by regarding it as a condition precedent to the exercise of a grant of power, otherwise wholly forbidden to the several states. I am constrained to conclude, based on all I have been able to find on this question, that (without directly saying so, in so many words) this is the obvious trend of the cases and the plain conclusion which inevitably follows from what has been ruled by the Supreme Court of the United States in the cases last above cited. If so it be that Congress may not validly attach to the permission granted a condition precedent which invades the sovereign rights of a state, then the question is, of course, a serious one; but in the light of the language of the many cases decided by the Supreme Court, which deal with this question, I feel a hesitancy in so holding. If the language of these cases has been too broad, in seeming absolutely to foreclose the question of constitutional validity, it is for the court which used this broad language to modify what I am constrained to consider the established rule.

[12] It is also urged that there has been an election to proceed under section 12775, supra, by the officers of the state and by the several municipal taxing officers, lawfully authorized by the Legislature to assess and collect the taxes here in controversy. This alleged election is bottomed upon the facts that plaintiff bank's shareholders, under the settled law of Missouri, became liable to this tax on the 1st day of June, 1923; that the bank in December, 1923, pursuant to notice given by these several officers who are saddled with the duties to assess and collect all taxes, made return of a list of the bank's shareholders and of their holdings, and of the value thereof, all pursuant to the valid requirements of section 12775, supra, while returns for income taxes for the year 1923 were not by law required to be made, and were not made till March 1, 1924, and payment thereof was not exacted till June 1, 1924. It is true that payment of the taxes so assessed against the shareholders as of June 1, 1923, was not by law required to be made till October 1, 1924; but these shareholders became bound to pay this tax as of the state of their holdings on June 1, 1923, even if they had in the meantime sold their shares.

The difficulty which confronts the defendants is that the election contended for was not in fact made, as the agreed facts conclusively show. The election, so far as it occurred, was wholly adventitious, for that the bank under the law of Missouri was required to act first in filing a list of its shareholders, which it did. But thereafter the officers of the state continued to assess, and require to be returned for taxation, all income derived from dividends on national bank stock, and took, exacted, and collected such latter taxes months before the taxes assessed on the shares themselves became collectible. No election can be predicated upon the doing of both of two electively permissible acts, merely because one of those acts accidentally happened to be first done. Whether, if the tax under section 12775, supra, had been first assessed and collected, and the income tax on dividends had not thereafter been assessed and collected, an election could be eked out upon such facts, I need not rule. For this did not occur. Both sorts of taxes were both assessed and collected, or are now threatened to be, in due statutory course. The agreed facts themselves conclusively contradict the existence of any election. In fact, this suit has for its object the enjoining of the collection of the taxes assessed on the value of the shares as of June 1, 1923.

[13] It is further urged by defendants that, regardless of the sweeping general provisions of the Income Tax Act of Missouri, this act by another provision exempts taxes on income from dividends on stock held in national banks. For this contention defendants rely on the below-quoted language

of the act, to wit: "There shall not be taxed under this article any income derived from any public utility performing functions of national government or those incident to the state or any political subdivision thereof." Section 13113, R. S. of Mo. of 1919.

Upon comparison it is apparent that the provisions of the Missouri Income Tax Act of 1917, providing for exemptions from taxation of divers sources of income, were taken bodily from the federal Income Tax Act of 1916 (39 Stat. 756), without a change in the text, except in cases, as here, where the federal act exempted state and municipal public utilities, an attempted change was made exempting public utilities performing functions of national government. Concretely, the language of the federal act is, "There shall not be taxed under this title any income derived from any public utility, or from the exercise of any essential governmental function accruing to any state * * * or any political subdivision of a state" (39 Stat. 767 [Comp. St. § 6336k]), while the language of the Missouri Income Act is as already above set out (see section 13113, R. S. Mo. 1919). Further on in the latter section the term "public utility" is twice used in its accepted technical sense, which sense fully comports with the definition of the term as used by the Legislature of Missouri in another act. Section 10411, R. S. Mo. 1919. This definition is that "the term 'public utility,' when used in this chapter, includes every common carrier, pipe line corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, and heat or refrigerating corporation, as these terms are defined in this section, and each thereof is hereby declared to be a public utility." This legislative definition is in full accord with the technical meaning of the term, which is almost everywhere accepted. Cawker v. Meyer, 147 Wis. 320, 133 N. W. 157, 37 L. R. A. (N. S.) 510; State ex rel. v. Wyandotte County Gas Co., 88 Kan. 165, 127 P. 639; Platt v. City of San Francisco, 158 Cal. 74, 110 P. 304. This term is synonymous with "public use." Valley City Salt Co. v. Brown, 7 W. Va. 191. While a national bank performs at least one delegated function of national government, it can scarcely be said to be a public utility. It is not compellable to accept, either as depositors or borrowers, all and sundry persons who may apply to become such. It may refuse a deposit, even though it needs the money, or may decline to lend, though it has the money.

Bearing in mind that the exemptions in the Income Tax Act of Missouri are copied bodily (with only the exception here under discussion) from the federal Income Tax Act of 1916, it will be noted that both acts specifically exempt federal land banks and joint stock land banks, whether state or federal, but no specific mention is made in either act of national banks. Under the federal Income Tax Act of 1916, income from national banks was taxed. The most that can possibly be claimed by defendants, as to the meaning of the provision of the Missouri Income Tax Act, quoted already and relied on by defendants as exempting income from dividends on national bank stock, is that it is utterly ambiguous and of doubtful meaning.

[14] In this situation reliance may be strongly founded on official, departmental, and legislative construction. Houghton v. Payne, 194 U. S. 88, 24 S. Ct. 590, 48 L. Ed. 888. From 1917, when the Income Tax Act was enacted, till August, 1924, the officers of Missouri, empowered to assess and collect taxes, uniformly construed this act as levying a tax on incomes derived from dividends on stock in national banks, and for all these years they assessed and collected taxes on such income. As forecast, such construction of a doubtful statute is the best test of its proper interpretation. 25 R. C. L. 1043, and cases cited. The Legislature of Missouri held three biennial sessions during the years that such construction was being put on this statute by the taxing officers and departments of the state, and took no action in the matter, till it passed the Act of April 18, 1925, electing to tax national bank stock under the provisions of section 12775, R. S. of Mo. of 1919. The latter act, it may be said in passing, is itself a solemn legislative construction, or confession, that the clause here under discussion did not exempt from taxation income from dividends on shares in national banks; for the latter act elects to tax under section 12775, supra, and declares all assessments on income from dividends on stock in such banks invalid and void. It follows that none of the several defenses set up by defendants is well taken, and so I am constrained to overrule each and every one of them.

The situation presented is, as counsel for plaintiffs frankly concede, unfortunate and one to be overcome, if it is legally possible so to do. But, after a long, diligent, and laborious examination of the statutes and cases in point, I have been unable to reach any other conclusion, however greatly I desire to do so. My first and casual view was that plaintiffs ought not to be allowed to

escape payment of these taxes, but this original view I have found myself compelled by the cold law to diametrically change. The remedy for the situation was initially in the hands of Congress and of the Missouri Legislature. If they failed timely to foresee impending difficulties and thereupon to take action, then wholly within their powers to take, in order to prevent or cure these difficulties, that is not the fault of the courts, which sit to construe the law, and not to make it. The large sums involved in the case, and the far-reaching effect of a decision of it, have served to make the case a most difficult one, and I may venture, in passing, to express a personal regret of my inability under the law to see it any other way.

It follows that a permanent injunction ought to issue as prayed, and a decree may be presented for settlement and entry accordingly. The defendants are officers of the city of St. Louis, and they ought not to be swerved from the conscientious performance of their respective duties by the fear of being mulcted in the costs of a lawsuit; so the costs and all of them will be taxed against the plaintiffs. And so it is ordered.