*In re* SPICKLER.

(*Circuit Court, S. D. Iowa, C. D.* October 25, 1890.)

1. CONSTITUTIONAL LAW—INTERSTATE COMMERCE—DELEGATION OF POWER TO REGULATE.
   Act Cong. 1890, known as the "Wilson Bill," which declares that intoxicating liquors shall, on arrival in a state, be subject to the operation of the police powers of the state, simply defines the time when imported intoxicating liquors shall become subject to state control, and is therefore not unconstitutional as being a delegation to the states of the power to regulate interstate commerce.

2. INTOXICATING LIQUORS—SALE IN ORIGINAL PACKAGES AFTER PASSAGE OF WILSON BILL.
   *Leisy* v. *Hardin*, 10 Sup. Ct. Rep. 681, did not declare the prohibitory liquor law of Iowa (Code, § 1523 *et seq.*) void under all circumstances, but only that imported liquors remaining unsold in the original packages in the hands of the importer are not subject to the jurisdiction of the state by reason of the commerce clause of the federal constitution. Therefore, on the passage by congress of the Wilson bill, which subjects to state police laws all imported liquors as soon as they pass within the boundaries of the state, it became unlawful to sell such liquors in Iowa without a re-enactment of the prohibitory liquor law.

3. HABEAS CORPUS—WHEN ISSUES—DEBATABLE FEDERAL QUESTION.
   Where it is a debatable question whether a state court deprived a person of his liberty contrary to the provisions of the federal constitution, and the point presented by such action of the state court has not been finally decided by the supreme court of the United States, the federal circuit court will not release the prisoner on writ of *habeas corpus*, but will leave him to present the federal question to the supreme court by writ of error.

*Habeas Corpus.*
*F. A. Charles,* for petitioner.

SHIRAS, J. A petition having been duly filed in this court by E. E. Spickler, averring that he was unjustly and illegally restrained and deprived of his liberty by the sheriff of Carroll county, Iowa, a writ of *habeas corpus* was issued in his behalf, and, in obedience to the mandate thereof, the sheriff of Carroll county brings the petitioner before this court, and returns, as the cause of his detention, that he, the said Spickler, was, by the district court of Carroll county, adjudged guilty of a contempt of court in violating an injunction issued by that court restraining him from selling intoxicating liquors contrary to the provisions of the prohibitory law of the state, and for such contempt he was fined and imprisoned. Evidence on behalf of petitioner has been introduced, showing that the liquor sold was in the original packages in which it was imported from Nebraska; the defendant doing business at Coon Rapids, Carroll county, Iowa, as agent for parties residing in Omaha,—in other words, the petitioner runs a saloon at Coon Rapids, in which, as agent for parties in Nebraska, he sells intoxicating liquors in the same packages in which the same are put up in Omaha. The sales, for the making of which he was fined and imprisoned, were made in September of this year, and after the adoption of the act of congress known as the "Wilson Bill." The contention of petitioner is that the prohibitory law of Iowa, as applied to imported liquors remaining in the original packages, had been declared unconstitutional and void by the supreme court of the United States in the case of *Leisy* v. *Hardin*, 135 U. S. 100, 10 Sup. Ct. Rep. 681, before the passage of the act of congress just cited; and that the passage of that act did not have the effect of re-enacting that statute, and that the state law is in fact no law, and can have no force or effect unless re-enacted by the legislature of Iowa. In my judgment this is a misconception of the construction to be given to the ruling of the supreme court in *Leisy* v. *Hardin*. It cannot be questioned that the state of Iowa, in the exercise of its police power, had the right to enact a statute prohibiting the sale within its borders of liquors to be used as a beverage. *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Foster* v. *Kansas*, 112 U. S. 201, 5 Sup. Ct. Rep. 8; *Mugler* v. *Kansas*, 123 U. S. 623, 8 Sup. Ct. Rep. 273. The gist of the Iowa statute is contained in the opening sentence of the first section of the chapter of the Code dealing with this subject, being section 1523 of the Code, and it reads as follows: "No person shall manufacture, or sell, by himself, his clerk, steward, or agent, directly or indirectly, any intoxicating liquors, except as hereinafter provided." The following portions of the chapter provide the means for enforcing this enactment, for punishing violators of the law, and for the sale of liquors for certain specified purposes. I know of no decision of the supreme court of the United States which holds that the enactment above cited was beyond the power of the state to enact, or that it was void by reason of any contravening provision of the federal constitution.

In *Bowman* v. *Railway Co.*, 125 U. S. 465, 8 Sup. Ct. Rep. 689, 1062, the question was presented whether section 1553, of the Code of Iowa, which in terms forbade any common carrier from knowingly bringing within the

state any intoxicating liquors without having first received a certificate from the county auditor that the same were imported to be sold for a legal purpose, was sustainable as an exercise of the police powers of the state; and it was held that the effect of the section was to interfere with the freedom of interstate commerce, and it was therefore void. In *Leisy* v. *Hardin* the facts were that Leisy & Co. were shown to be engaged in the manufacture of beer in the state of Illinois; that they imported a quantity thereof into the state of Iowa for the purpose of selling the same in the original packages; that while in their possession unsold it was seized under the order of the state court, in a proceeding brought to enforce the state law; that Leisy & Co. thereupon replevied the beer; and thus the question was presented whether the beer was or not, in its then condition, liable to seizure and confiscation under the prohibitory law of the state. This question was carried to the supreme court, and it was by that court held that the beer was not liable to seizure under the statute of Iowa; that the protection of the clause of the federal constitution giving congress power to regulate foreign and interstate commerce was thrown around the importation until the importer should have sold the same in the original packages, and thereby caused the importation to become a part of the common mass of the property within the state; and that when this was done, then, and not till then, would the property become liable to be dealt with under the provisions of the state statute.

If the facts of that case had been that the seizure had not been made until after a sale of the packages by the importer, is it not clear that the supreme court would have held that the same were then subject to the operation of the state law? The three points decided in that case are: (1) That the commercial clause of the federal constitution prevents the states from forbidding the importation of any article commonly recognized as property, and not harmful or dangerous in the condition in which it is imported. (2) That the right of importation thus secured protects the property from the operation of state laws until the importer has caused the same to become intermingled with the common mass of the property in the state, which ordinarily is effected by a sale in the original packages. (3) That it is for the congress of the United States to determine whether such imported property should or should not be rendered subject to the police laws of the state at and from any time prior to a sale by the importer in the original packages.

In the *Bowman Case* the supreme court was called upon to decide the validity of a particular section of the statute, and, for the reasons stated, held it void.

In the *Leisy Case* there was not presented for consideration the validity of one or more sections of the statute. The real point for decision was whether the statute, as a whole,—that is, the prohibitory principle,—could be made applicable to beer or other liquors imported from another state; and it was held that—

"Under our decision in *Bowman* v. *Railway Co., supra*, they had the right to import this beer into the state; and, in the view which we have expressed, they had the right to sell it, by which act alone it would become mingled

in the common mass of property within the state.   Up to that point of time, we hold that, in the absence of congressional· permission to do so, the state had no power to interfere by seizure, or any other action, in prohibition of importation and sale by the foreign or non-resident importer.   *   *   *   The legislation in question is, to the extent indicated, repugnant to the third clause of section 8 of article 1 of the constitution of the United States, and therefore the judgment of the supreme court of Iowa is reversed," etc.

The decision in the *Leisy Case* therefore does not declare any section or particular portion of the Iowa statute to be wholly void, nor does it declare the whole statute to be void under all circumstances.   What it did declare was, that the effort to make the prohibitory purpose of the statute applicable to imported liquors remaining in the original packages unsold in the hands of the importer was repugnant to the commercial clause of the constitution, and this for the reason that, until such importations had become intermingled with the common mass of property in the state, such liquors were not subject to the jurisdiction of the state. Neither in terms nor by fair inference, does this decision declare that the Iowa statute, in whole or in part, is void or unconstitutional, as applied to liquors subject to the jurisdiction of the state.   In the *Bowman* and the *Leisy Cases* alike, the power of the state to regulate or forbid the sale of intoxicating liquors within its jurisdiction is fully recognized, and the effect of these decisions is simply to define the limitations of that jurisdiction.   The language of the state statute is general in its terms, but the legislature in enacting it must be presumed to have intended it to apply to persons and property within the jurisdiction of the state.   It is doubtless true that it was the belief of the legislature that the statute would be applicable to all liquors within the boundaries of the state, but that belief grew out of a mistake as to the time when imported property passes under the jurisdiction of the state in the exercise of its police and taxing power.   It was not the intent of the legislature to pass an act to affect liquors before the same came under the jurisdiction of the state, but to control all within the jurisdiction of the state.   When the conclusion reached in the *Leisy Case* was announced, the extent of the jurisdiction of ·the state was made plain, and thus it was found that the statute of Iowa was limited in its operation and control to an extent greater than was anticipated by the legislature.   The ascertainment of the fact that broad and general terms used in a statute· are subject to the limitation contained in a constitutional provision in the state or federal constitution does not show that the statute is void, but only demonstrates that, in the construction of the language found therein, regard must be had to the constitutional limitation.   It is a fundamental rule that legislative acts shall not be declared void by the courts, if by any reasonable construction thereof such result can be avoided.   If, by limitation upon its general terms, the same can be fairly construed and so applied as to bring the statute within the constitution, and thus save it from being in conflict therewith, such limited construction should be adopted.   It is entirely clear that the purpose sought to be achieved in the adoption of the prohibitory law of the state, and the amendments thereto, was the regu-

lation of the traffic in intoxicating liquors, and to prohibit the sale thereof in the state for use as a beverage. There was no purpose on part of the state to undertake the regulation of foreign or interstate commerce as such. It has been determined, however, that, in the adoption of the amendments to the statute, the legislature has, in effect, attempted to make the prohibitory law applicable, not only to property within the jurisdiction of the state, but also to importations before the same became subject to state jurisdiction. To this extent the law is void, and has been so held; but this does not mean that, as applied to property within the jurisdiction of the state, the statute is void in whole or in part. The true conclusion is that the statute of Iowa remains in full force as to all property within the jurisdiction of the state. This construction gives full force to the statute as applied to property within the jurisdiction of the state, and at the same time gives to the importer the full benefit of the protection afforded him by the commercial clause of the federal constitution. If the sales made by the petitioner had been made before the adoption of the act of congress known as the "Wilson Bill," it might well be claimed that the provisions of the state statute could not be made applicable thereto, and that the petitioner would, of right, be entitled to his discharge. In fact, however, the sales were made after the Wilson bill had become a law, and it is necessary to consider the effect thereof on the rights of the petitioner.

It is said that this act of congress is itself void, for the reason that it assumes to confer upon the states the power to regulate interstate commerce. Such is not the purpose or effect of the act. It does not declare that the states shall, in general or in any particular, have the power to regulate interstate commerce. It confers no power upon the states to legislate upon that subject. The act declares that intoxicating liquors shall, upon arrival in the state or territory, be subject to the operation of the police powers of the state. In the exercise of the constitutional power to regulate foreign and interstate commerce, congress has declared when such imported property shall become subject to the state laws. The states are not authorized to declare when such importations shall become subject to state control, nor can the states in any manner change or affect the enactment made by congress upon that subject. Congress can at any time abrogate or change the enactment in question, and it is clearly a constitutional exercise of the power conferred on congress. It is apparent to every one that at some time, or upon the happening of some event, imported property loses that character, and becomes subject to the laws of the state; and it is for congress, which possesses the power to regulate commerce, to define the time or event which shall have the effect of subjecting importations to state control, and this is what is done by the Wilson bill in regard to intoxicating liquors.

It is also earnestly contended that, granting the validity of the Wilson bill, the statute of Iowa cannot be held to be in force, because it has not been re-enacted since the decision of the supreme court in *Leisy* v. *Hardin*.

The thought is that the statute was then declared wholly void, and that the act of congress does not impart life and validity to it. If it be

true that the statute was declared wholly void, then it follows that congress cannot give it life. No one claims that congress can adopt a prohibitory liquor law for the state of Iowa. The error lies in the assumption that the statute of Iowa has been declared wholly void.

I have attempted to maintain, in this opinion, the proposition that, after the decision in the *Leisy Case*, the statute of Iowa remained in full force in relation to all liquors within the police jurisdiction of the state. The language of the statute is broad and comprehensive, but is nevertheless subject to the limitation imposed upon the police power of the state by the provisions of the federal constitution, and must always so remain. All the state can ever do in this particular is to declare the will of the state in regard to the sale of intoxicating liquors when the same come within the jurisdiction of the state. That it has already done in the statute now in force. The state, under the Wilson bill, does not possess the power to declare when imported liquors shall be freed from the protection of the commercial clause of the federal constitution, and pass under the operation of the police powers of the state. Congress cannot confer that power upon the state. It is for congress to determine that question. It is for the state to say what the police regulations of the state shall be as to liquors within the jurisdiction of the state, and for congress to define when or how imported liquors shall become subject to state control. Whether the legislation of the state antedates the action of congress is wholly immaterial. Congress determines when imported property shall become subject to the state laws, and can at any time change the enactment. The states regulate the sale of property within their jurisdiction, and can at any time modify or change these police regulations. It cannot be true, because congress to-day passes an act declaring that importations shall become subject to state police or revenue laws so soon as they pass the boundaries of the state, that the state must, in order to make such laws applicable thereto, at once re-enact such laws. That could only be required upon the theory that the action of congress was permissive in its effect, and was intended to enable the state to determine when it would subject imported liquors to state control; but it is clear that such was not the purpose of the Wilson bill. That bill, upon its adoption, made subject to state police laws all imported liquors as soon as they should pass within the boundaries of the state. It is not declared that such liquors shall be subject to the police laws hereafter to be passed, but the declaration is that such liquors shall "be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers," etc. It seems to me that this enactment is so plain that it needs no construction other than to read it as it is written, and it must therefore be the fact that, upon the adoption of the Wilson bill, imported liquors, upon their arrival in Iowa, became subject to the then existing police laws of the state, just the same as though such liquors had been manufactured in Iowa. Thus we are brought back to the question whether, when the petitioner sold the liquors which it is admitted he did sell, there was then in force in Iowa a law which made it illegal to sell liquors produced in Iowa for use

as a beverage. There is such a law upon the statute books of the state. If that law was in force as to domestic liquors, it was in force as to imported liquors. There is no middle ground in this matter. Unless it be held that the decision of the supreme court in *Leisy* v. *Hardin* is to the effect that the prohibitory law of Iowa is wholly void, and cannot be enforced as against domestic liquors, then it must be held that, after the adoption of the Wilson bill, imported liquors became subject to its provisions. After the enactment of the Wilson bill, the matter of sale in original packages ceased to be of any moment. When the imported liquors pass the boundary of the state, they then become subject to the law of the state, without regard to the character of the packages in which they are contained.

It is urged in argument that it is necessary to have legislative action on part of the state in order to render illegal the sale of imported liquors, because it was held in the *Leisy Case* that the importer had a right to sell the same in the original packages, and that, as there has been no change in or addition to the statute of Iowa since the date of that decision, such right must still continue. If the statute of Iowa in terms excepted from its operation imported liquors, as it once did, there would be force in the argument; but such is not now the fact. The language in the statute is as broad and comprehensive as it is possible to make it. It cannot be questioned that, in the adoption of section 1523 of the Code, it was the intent of the legislature to absolutely forbid the manufacture or sale of any intoxicating liquors for use as a beverage. This section was intended to and does apply to all liquors, regardless of the question whether the same are domestic or imported; and the supreme court of the United States has, in several cases, upheld the validity of the law as applied to liquors within the jurisdiction of the state, but further held that it did not become applicable to imported liquors until the same had been, by the importer, sold, and thus made part of the common mass of the property subject to state control; and thus the statute was limited in this particular. These same decisions, however, also expressly declare that it is not within the power of the state to declare by legislation when imported property becomes subject to state control, nor to subject imported property to the operation of the state revenue and police statutes until it had ceased to be an importation. The state possesses no more power in this regard to-day, than it did when these rulings were made. If the legislature should now convene and undertake to deal with the subject, what could it enact that is not now in force upon the statute book of the state? Could it legally adopt an act declaring that the sale of imported liquors by the importer thereof in the original packages is forbidden? When the state attempted to so enact, the supreme court held that the federal constitution forbade the exercise of such a power on part of the state, and what has since changed the force of this constitutional restriction? That which prevented the state from legislating on this question before the passage of the Wilson bill is in equal force now. All that the state can do is to declare that, within the jurisdiction of the state, no liquors, imported or domestic, shall be sold or used as a

beverage; and it is for congress to declare when imported liquors shall become subject to the jurisdiction of the state in this particular. Under the division of powers created by our dual system of government, it is necessary, in order to control the sale of imported liquors, that there should be legislation on part of both the state and federal governments. It is the province of the former to regulate or forbid the sale of all liquors within the jurisdiction of the state, and of the latter to determine the point of time when imported liquors become subject to the jurisdiction of the state. The state has long since declared its purpose touching liquors within its jurisdiction, and no additional legislation or re-enactment is needed to make plain the law of the state in that particular.

If the legislature, as suggested, should now undertake to legislate on this subject, with a view to preventing the sale of imported liquors as a beverage while in the hands of the importer, all it could do would be to declare that no liquors could be legally sold for use as a beverage by any one within the jurisdiction of the state; and that is the exact purport of the statute now in force, and which is as broad as it is within the power of the state to make it. The case is simply this: The petitioner is a resident of Iowa, and therefore subject to the police laws of the state. Those laws declare it to be a penal offense to sell intoxicating liquors for use as a beverage. In September last, and after the adoption of the Wilson bill, the petitioner sold intoxicating liquors for use as a beverage, and for so doing, in violation of an injunction issued from the district court of Carroll county, he was brought before that court and fined and imprisoned. He now asks the court, by use of a writ of *habeas corpus*, to free him from imprisonment, on the ground that the liquors he sold were imported from Nebraska, and sold in the original packages. The answer is that since the passage of the Wilson bill imported liquors, upon their arrival in Iowa, become subject to the prohibitory law of Iowa, the same as though they had been produced in Iowa. The district court of Carroll county, as it had a right to do, upon a petition duly presented to it, enjoined the petitioner from selling intoxicating liquors in violation of the statute of Iowa. Disregarding such injunction, the petitioner made sales of liquors for use as a beverage, and thereupon was cited before the district court to answer for contempt of court in violating the injunction, and, failing to excuse himself, was fined and imprisoned.

I entirely concur with the state court in holding that, as the sales of the imported liquors were made after the enactment of the Wilson bill, the provisions of the Iowa statute are applicable thereto, and that in making such sales the petitioner violated the statute of Iowa. Furthermore, if I entertained doubt upon the principal question, or was in my own mind satisfied that the state court had erred in its construction of the law, I should not feel justified in releasing the petitioner from the effect of the judgment of that court. The way is open to the petitioner to present the question to the supreme court of the United States by a writ of error to the state court. He has thus a means of correcting any error committed to his prejudice in the state court, by a direct appeal to

the tribunal which we all recognize as the paramount and final arbiter of all questions arising under the federal constitution and laws.    I do not question the existence of the power in the United States circuit courts to grant writs of *habeas corpus* when it is alleged that a person is deprived of his liberty by state action, contrary to the provisions of the federal constitution; but it is a power to be sparingly exercised.    When it appears that the petitioner is held under the judgment of a state court of competent jurisdiction, before this court should grant him a discharge, it should be made to appear that the illegality of his detention is beyond fair question; and in all cases wherein the pivotal point has not been finally decided by the supreme court, but still remains a debatable question, the circuit court should not discharge the petitioner, for this would be simply converting the writ of *habeas corpus* into a writ of error, by means of which this court would be asked to review the judgment of the state court upon a debatable question of law arising under the federal constitution, but which it was the duty of that court to investigate and decide.    In such cases, the federal question can be readily presented to the supreme court, and, as there exists this plain and proper remedy, it should be followed.    When the question has been finally settled by the supreme court, if the state courts should refuse to follow the construction given by the supreme court to the federal constitution, and, disregarding such construction, should sentence a person to imprisonment, then the duty of the circuit court to grant relief by means of a writ of *habeas corpus* would be plain; but, until that improbable contingency arises, the writ should not be executed in cases like that now before the court.

For the reasons stated, the writ is discharged, and the petitioner is continued in custody of the sheriff.