### NEW YORK CENT. R. CO. v. PUBLIC SERVICE COMMISSION OF NEW YORK, SECOND DIST., et al.

(District Court, N. D. New York. August 10, 1920.)

1. Courts ⊜⊷101—Application for preliminary injunction against Public Service Commission must be heard by three judges.

In suit by a railroad against a state Public Service Commission, plaintiff's application for preliminary injunction restraining the commission from enforcing its order requiring plaintiff to file an amended tariff of passenger rates at 2 cents a mile, instead of 3, on the ground that the commission's order was a denial of the equal protection of the law and a deprivation of property without due process, violating Const. Amend. 14, must be heard by a court composed of three judges, as required by Judicial Code, § 266 (Comp. St. § 1243).

2. Railroads ⊜⊷5½, New, vol. 6A Key-No. Series—Federal control of rates valid.

Intrastate passenger rates of 2 cents a mile, authorized by state statutes, were lawfully changed to 3 cents a mile by General Order No. 28, issued May 25, 1918, by the Director General of Railroads, under Federal Control Act March 21, 1918, § 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾h) ; it being a constitutional exercise of the war power of Congress.

3. Railroads ⊜⊷5½, New, vol. 6A Key-No. Series—Termination of federal control restored state regulations of rates.

The Federal Control Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p) merely suspended existing state laws regulating rates, and upon termination of federal control the state laws continued to control the rates ex proprio vigore, so that where a railroad, before federal control was required by Laws N. Y. 1853, c. 76, § 7, and Railroad Law N. Y. § 57, to charge not more than 2 cents a mile for way passengers, such rate automatically became effective after September 1, 1920, the limit of time after return of railroads to private ownership, under Federal Transportation Act Feb. 28, 1920, § 208 (a), during which the states could not reduce rates; the state not being required to express its intention to continue its established rates by enacting a new law in the same terms; and, under Public Service Commissions Law N. Y. § 48, an order of the commission requiring the railroad to file with the commission, on or before August 1, 1920, an amended tariff restoring the 2-cent passenger rate, and a suit by the commission against the railroad to enforce the order, were proper.

Hough, Circuit Judge, dissenting.

In Equity. Suit by the New York Central Railroad Company against the Public Service Commission of New York, Second District,

and others. On plaintiff's motion for preliminary injunction. Motion denied.

Before WARD and HOUGH, Circuit Judges, and COOPER, District Judge.

WARD, Circuit Judge. The New York Central Railroad Company filed its bill against the Public Service Commission of the state of New York for the Second district, and against its attorney, alleging that the commission had made an order June 15, 1920, requiring it to file, 30 days before September 1, 1920, an amended tariff of rates, restoring its rates for way passengers between Albany and Buffalo to 2 cents a mile on and after that date, in accordance with the law of the state of New York, and had begun a suit by the defendant, its attorney, in the Supreme Court of the state of New York for an injunction or mandamus compelling it to do so. The bill further alleges that the plaintiff is entitled to charge three cents a mile under section 208 (a) of the federal Transportation Law (41 Stat. 464), and that the order in question denies it the equal protection of the law and deprives it of its property in violation of the Constitution of the United States, and more particularly of the Fourteenth Amendment thereof.

The answer of the commission denies that its order, or the suit instituted by it to enforce the order, violates the Fourteenth Amendment and alleges, on the contrary, that the rate in question is not regulated by the federal Transportation Law at all, but by section 7 of chapter 76 of the Laws of 1853, authorizing the plaintiff's consolidation, and by section 57 of the Railroad Law of the state of New York (Consol. Laws, c. 49), both of which require the plaintiff to charge not more than 2 cents a mile for such way passengers. The plaintiff now moves for a preliminary injunction enjoining the commission and its attorney from enforcing or attempting to enforce the order in question pendente lite.

[1] Obviously, if the contention of the plaintiff be right, a constitutional question is raised, viz. whether it is threatened by the state authorities with being deprived of one cent per mile per passenger, its property under the federal Transportation Law, and the application for a preliminary injunction must be heard by a court constituted as required by section 266 of the Judicial Code (Comp. St. § 1243). A pure question of law is presented.

[2] The railroad company, by section 7 of the special act (chapter 76, Laws of 1853) authorizing its consolidation, and by section 57 of the Railroad Law of the state of New York, is required to carry way passengers between Albany and Buffalo at a rate not exceeding 2 cents per mile. This rate was observed down to June 10, 1918, when by virtue of General Order No. 28, issued May 25, 1918, by the Director General of Railroads, under section 8 of the Federal Control Act of March 21, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾h), the rate of carriage of passengers, both interstate and

intrastate, was fixed at 3 cents per mile. This is a constitutional exercise of the war power of Congress. Northern Pacific Ry. Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897.

[3] The Federal Transportation Act of February 28, 1920, directed the return of railroads theretofore under federal control on February 29, 1920. Section 208 (a) of that act reads:

Section 208(a). *"Existing Rates to Continue in Effect.* All rates, fares, and charges, and all classifications, regulations, and practices, in any wise changing, affecting, or determining, any part or the aggregate of rates, fares, or charges, or the value of the service rendered, which on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by state or federal authority, respectively, or pursuant to authority of law; but prior to September 1, 1920, no such rate, fare, or charge shall be reduced, and no such classification, regulation, or practice shall be changed in such manner as to reduce any such rate, fare, or charge unless such reduction or change is approved by the commission."

The case turns entirely upon the construction of this section. It clearly authorizes the states to change the existing federal rates as to intrastate carriage on and after March 1, 1920, except that they cannot reduce those rates before September 1, 1920, without the approval of the Interstate Commerce Commission. The continuance of the federal rates for 6 months from March 1, 1920, was coincident with the government's guaranty of just compensation to the railroads for this period provided in section 209, and is a protection to the government.

Congress was legislating for 48 states, some of which we suppose had not fixed intrastate rates by legislation or by administrative commissions, and therefore it was provided that the change of the federal rates should be made by "state authority" or "pursuant to authority of law." When a state law existed regulating the rates the Federal Control Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p) did not repeal, but merely suspended, that law. Upon the termination of federal control the state law continues to control the rates ex proprio vigore. See the very analogous situation discussed in Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565, 29 L. Ed. 855, and Butler v. Goreley, 146 U. S. 303, 13 Sup. Ct. 84, 36 L. Ed. 981.

It seems to us incredible that Congress could have intended to require a state which had enacted such a law to express its intention to continue its established rates by enacting a new law in the same terms. Section 48 of the Public Service Commissions Law of the state of New York (Consol. Laws, c. 48) authorizes the commission to investigate of its own motion any act done or omitted to be done by a railroad corporation "in violation of any provision of law." If, as we hold, the existing legislation of the state of New York will change the federal rates by restoring the state's rate on and after September 1, then the plaintiff was bound to file with the Public Service Commission an amended tariff in accordance therewith on or before August 1. It was this which the order complained of required the plaintiff to do, and the plaintiff refuses and has omitted to do so in violation of law.

We are told that the case is one of great importance, will go to the Supreme Court, and that no time should be lost; therefore, without saying more, the motion is denied.

HOUGH, Circuit Judge, dissents.