BUDER, Assessor, et al. v. FIRST NAT. BANK IN ST. LOUIS et al.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1927.)

No. 7309.

1. **Taxation** ⟊11—Statute authorizing states to tax national bank shares held constitutional (Rev. St. § 5219, as amended by Act March 4, 1923 [Comp. St. § 9784]).

Since national banks are instrumentalities of United States, subject to its paramount authority and taxable by states only in manner expressly permitted by Congress, Rev. St. § 5219, as amended by Act March 4, 1923 (Comp. St. § 9784), permitting states to tax shares of national banks, income from dividends, or income of banks, but limiting choice to only one of such methods, is constitutional.

2. **Taxation** ⟊386(2)—Proceeding by state to tax shares of national banks before taxing income from such shares held not an election to tax under first method (Rev. St. Mo. 1919, §§ 12775, 13106–13136; U. S. Rev. St. § 5219, as amended by Act Cong. March 4, 1923 [Comp. St. § 9784]).

That state taxing officers assessed ad valorem taxes on shares of national bank under Rev. St. Mo. 1919, § 12775, before making assessment on income derived from such shares under sections 13106–13136, *held* not an election to tax under first method under Rev. St. U. S. § 5219, as amended by Act Cong. March 4, 1923 (Comp. St. § 9784), authorizing states to tax national banks in only one of three methods permitted, even if such officers were empowered to make an election, which they are not.

3. **Constitutional law** ⟊193—Legislature cannot validate statute for previous period during which it was ineffective (Const. Mo. 1875, art. 2, § 15).

Under Const. Mo. 1875, art. 2, § 15, Legislature cannot enact retroactive law nor validate law which had become ineffective for period during which it was ineffective.

4. **Taxation** ⟊211—National bank is not "public utility" within act exempting from taxation income of public utilities performing functions of national government; "public use" (Rev. St. Mo. 1919, §§ 10411, 13113).

In view of Rev. St. Mo. 1919, § 10411, national bank is not "public utility" within section 13113, exempting from taxation income derived from public utilities performing functions of national government; "public utility" being synonymous with "public use," and referring to persons or corporations charged with duty to supply public with use of property or facilities owned or furnished by them (citing Words and Phrases, First Series, "Public Use").

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Public Utility.]

5. **Taxation** ⟊609—Taxpayer is not required to apply to state administrative authorities for relief against invalid taxing statute before seeking injunctive relief.

Taxpayer is not required to do futile act of applying to state administrative authorities for relief against invalid taxing statute before applying to federal court for injunctive relief, since administrative authorities cannot do otherwise than assume validity of statute.

6. **Taxation** ⟊113—State statute, taxing national bank shares, held only legally effective statute taxing such banks prior to amendment of federal statute (U. S. Rev. St. § 5219, as amended by Act Cong. March 4, 1923 [Comp. St. § 9784]; Rev. St. Mo. 1919, § 12775).

Prior to amendment on March 4, 1923, of Rev. St. U. S. § 5219 (Comp. St. § 9784), provision of Rev. St. Mo. 1919, § 12775, taxing shares in national banks under authority granted state by section 5219 was only legally effective law relating to taxation of national banks.

7. **States** ⟊4—State statute, prevented from operating on all subjects within its purview by congressional inhibition, becomes fully effective on removal of inhibition.

Where general state law, intended to operate on all subjects within its purview, is not fully effective because of some congressional inhibition or lack of permission, it becomes fully effective without re-enactment when inhibition is removed or permission is given by Congress so that it can become completely operative without destroying or impairing its effectiveness or defeat intent of Legislature which enacted it.

8. **Taxation** ⟜113—State statute taxing national bank stock remained only valid statute relating to such taxation after amendment of federal statute, notwithstanding existence of another state statute authorizing tax on income from stock (Rev. St. Mo. 1919, § 12775; U. S. Rev. St. § 5219, as amended by Act March 4, 1923 [Comp. St. § 9784]; Mo. Income Tax Act 1917).

Where Rev. St. Mo. 1919, § 12775, taxing shares of national banks, was only legally effective law relating to their taxation prior to Act Cong. March 4, 1923, amending Rev. St. U. S. § 5219 (Comp. St. § 9784), by authorizing taxing of incomes from such stock but permitting only one of such methods of taxation to be operative, it remained as only permissible method for taxing national banks thereafter, notwithstanding Missouri Income Tax Act 1917 (Rev. St. Mo. 1919, §§ 13106–13136), taxed incomes without exempting national banks.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by the First National Bank in St. Louis and another to enjoin William Buder, as Assessor of the City of St. Louis and as President of the Board of Equalization of St. Louis, and others, from collecting certain taxes. From a decree granting a permanent injunction (8 F.[2d] 883), defendants appeal. Reversed and remanded, with directions.

James T. Blair and O. J. Mudd, both of St. Louis, Mo. (Edward W. Foristel and Foristel, Mudd, Hezel & Habenicht, all of St. Louis, Mo., on the brief), for appellants.

Charles P. Williams, of St. Louis, Mo. (Bates, Williams & Baron, of St. Louis, Mo., on the brief), as Special Counsel for St. Louis Board of Education, and for appellants.

Julius T. Muench, City Counselor, and Oliver Senti, First Associate City Counselor, both of St. Louis, Mo., for appellant Buder.

North T. Gentry, Atty. Gen., and James A. Potter, Asst. Atty. Gen., for appellants.

Rhodes E. Cave, of St. Louis, Mo. (T. S. McPheeters, P. Taylor Bryan, Frank Sullivan, Sam B. Jeffries, Bryan, Williams & Cave, and Jones, Hocker, Sullivan & Angert, all of St. Louis, Mo., on the brief), for appellees.

Before BOOTH, Circuit Judge, and PHILLIPS and SANBORN, District Judges.

JOHN B. SANBORN, District Judge. This is a suit in equity, brought by the First National Bank in St. Louis and Joseph D. Bascom, one of its stockholders, as plaintiffs (appellees), against the defendants (appellants), the taxing officers of the city of St. Louis, Mo. Its purpose is to enjoin the enforcement of ad valorem taxes assessed against the shares of stock of the bank as of June 1, 1923, for the year 1924, pursuant to section 12775 of the Revised Statutes of Missouri 1919.

Prior to the Act of Congress of March 4, 1923 (chapter 267, 42 Stat. 1499 [Comp. St. § 9784]), amending section 5219 of the Revised Statutes of the United States, the statute of Missouri above referred to, which had been in force since 1889 and which provided for the taxation of national bank shares upon an ad valorem basis, was admittedly valid and operative. The act of 1923 enlarged the scope of the power of the state to tax national banks. It gave authority to the state to tax either the shares of stock—as it had been doing—to include dividends therefrom in taxable income of the shareholder, or to tax the income of the bank itself, and contained this provision:

"The imposition by said state of any one of the above three forms of taxation shall be in lieu of the others."

In 1917, Missouri had enacted an Income Tax Law (sections 13106 to 13136 of the Revised Statutes of Missouri 1919), which has been in force since that time. It did not, by its terms, except from its operation income derived from national bank shares. The question as to whether it applied to such income has not been determined by the Supreme Court of the state. Taxes upon dividends from such shares were levied and collected. After the amendment to section 5219 on March 4, 1923, the taxing authorities of the state took the usual steps to collect the ad valorem tax on the bank shares as theretofore, and also to collect the income tax.

The plaintiff Bascom had included in his return for each of the years 1922 and 1923 his income from his shares in the bank, and had paid the tax provided by the income tax law. When the taxing officers assessed the ad valorem taxes against the shares under section 12775 and delivered the tax bill to the collector, Bascom and the bank brought this suit. The court below entered its decree granting a permanent injunction against the enforcement and collection of such taxes (8 F.[2d] 883), from which this appeal is taken.

The court was of the opinion that, after the enactment of the amendment to section 5219, there were in effect in the state of Missouri two methods of taxing the shares of national banks, (1) the ad valorem tax, and (2) the income tax upon the dividends de-

rived by the holders from those shares; that the Act of Congress of 1923 permitted either of those methods, but not both; that, inasmuch as both could not be valid, and there having been no election by the Legislature as to which should be operative, they mutually canceled each other; that therefore there was no law relating to the taxing of national banks in the state of Missouri from March 4, 1923, until the 18th day of April, 1925, when the state Legislature passed an act (page 372, Laws of Missouri 1925) adopting the method of taxing national banks provided by section 12775, ratifying the action of the state tax commission taken in 1924, which directed the omission from the returns of taxable income, of dividends on national bank shares, and the assessment of taxes under section 12775, and invalidating assessments of taxes upon national banks or their shares theretofore levied otherwise than in accordance with the provisions of that section.

The defendants give various reasons for upholding the assessment in question.

[1] They urge the unconstitutionality of section 5219 and the amendment of 1923. We think it is now too late to attempt to overturn the well-settled doctrine that national banks are instrumentalities of the United States, subject to its paramount authority, and taxable by the states only to the extent and in the manner expressly permitted by Congress. McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Osborn v. Bank of U. S., 9 Wheat. 738, 6 L. Ed. 204; Van Allen v. Assessors, 3 Wall. 573, 18 L. Ed. 229; Lionberger v. Rowse, 9 Wall. 468, 19 L. Ed. 721; People v. Weaver, 100 U. S. 539, 25 L. Ed. 705; Davis v. Elmira Savings Bank, 161 U. S. 283, 16 S. Ct. 502, 40 L. Ed. 700; Owensboro Nat. Bank v. Owensboro, 173 U. S. 664, 19 S. Ct. 537, 43 L. Ed. 850; First Nat. Bank of Gulfport v. Adams, 258 U. S. 362, 42 S. Ct. 323, 66 L. Ed. 661; Bank of California v. Richardson, 248 U. S. 476, 39 S. Ct. 165, 63 L. Ed. 372; Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; First Nat. Bank of Guthrie Center v. Anderson, 46 S. Ct. 336, 70 L. Ed. 295.

[2] It is also claimed that the taxing officers of Missouri made an election for the state, immediately after the amendment to section 5219, to assess taxes under section 12775. The facts do not bear out this contention. The officers proceeded as formerly and levied both kinds of taxes. The fact that the ad valorem tax was first assessed did not constitute an election, even if the officers were empowered to make one, which they clearly were not, having no legislative power.

[3] It is also claimed that the Legislature of Missouri, by the act of 1925, making a choice of methods of taxation of national banks and attempting to confirm the assessment of the ad valorem tax for 1924, made that tax valid during the period in question. While the Legislature could and did make an effective choice for the future, it is obvious that, if there was no law providing for an ad valorem tax from March 4, 1923, to April 18, 1925, any attempt by the Legislature to enact a law or to validate a law which had passed out of existence or become ineffectual, for any reason, for that period, would be a nullity, because the Legislature had no power to pass a retroactive law. Section 15, art. 2, Constitution of Missouri of 1875.

[4] It is further contended that national banks are public utilities, and therefore fall within the exemption of the Income Tax Law, which contains this provision:

"There shall not be taxed under this article any income derived from any public utility performing functions of national government or those incident to the state or any political subdivision thereof." Section 13113, R. S. Mo. 1919.

We think that a national bank is not a "public utility," and that there is no indication that the Legislature intended that term to include such banks. While it is difficult to define the term with exactness, the authorities indicate that it is synonymous with "public use" and refers to persons or corporations charged with a duty to supply to the public the use of the property or facilities owned or furnished by them. Valley City Salt Co. v. Brown, 7 W. Va. 191; Cawker v. Meyer, 147 Wis. 320, 133 N. W. 157, 37 L. R. A. (N. S.) 510; State ex rel. v. Wyandotte County Gas Co., 88 Kan. 165, 127 P. 639; Platt v. City & County of San Francisco, 158 Cal. 74, 110 P. 304; 6 Words and Phrases, First Series, 5829; Baldwin's Century Edition of Bouvier's Law Dictionary, 1003. We cannot find that it has ever been applied to corporations performing a public function or affected by a public interest, which may arbitrarily select their customers, such as banks, insurance companies, and the like. The state of Missouri has legislated with reference to "public utilities," has defined them in section 10411, R. S. Missouri 1919, and has not included either national or state banks.

[5] The defendants also contend that there was available to the plaintiffs a remedy

through the administrative tax boards of Missouri, and that, not having sought that remedy, they cannot maintain this suit. This upon the authority of Farncomb et al. v. City and County of Denver et al., 252 U. S. 7, 40 S. Ct. 271, 64 L. Ed. 424; Milheim v. Moffat Tunnel Dist., 262 U. S. 710, 43 S. Ct. 694, 67 L. Ed. 1194; McGregor v. Hogan, 263 U. S. 234, 44 S. Ct. 50, 68 L. Ed. 282; First Nat. Bank v. Weld County, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784; Gorham Mfg. Co. v. Tax Comm., 266 U. S. 265, 45 S. Ct. 80, 69 L. Ed. 279. In those cases, however, the complaints were of invalid assessments under existing laws. Here the complaint is of an assessment under no law at all.

In Stanley v. Supervisors of Albany, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000, in which it was held that a suit in equity would lie to enjoin the exaction of the illegal or unconstitutional excess of a tax, it was said, relative to administrative remedies:

"To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, *where the assessing officers had jurisdiction to assess the property.*"

Here, if there was no law, there was no jurisdiction to assess the shares of stock. There could be nothing more futile than an application for administrative relief in a case of this kind. If section 12775 was in force, the tax was properly assessed; if it was not in force, there was no such tax. No administrative officer or board of Missouri could do otherwise than assume the validity of the law under the circumstances, and there was, as a matter of fact, no administrative remedy.

To our minds, there is in this case the one vital question, and that is, Were there in effect in Missouri on March 4, 1923, upon the taking effect of the amendment to section 5219, two statutory methods of taxing national banks?

Prior to the Act of Congress of 1923, the only tax permitted was an ad valorem tax on shares. This is clearly indicated by the words of section 5219:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located. * * * "

With reference to this section, the Supreme court in Owensboro Nat. Bank v. Owensboro, 173 U. S. 664, 669, 19 S. Ct. 537, 539 (43 L. Ed. 850) said:

16 F.(2d)—63

"This section, then, of the Revised Statutes is the measure of the power of a state to tax national banks, their property or their franchises. By its unambiguous provisions the power is confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank. Any state tax, therefore, which is in excess of and not in conformity to these requirements is void."

In First Nat. Bank v. Albright, 208 U. S. 548, 552, 28 S. Ct. 349, 350 (52 L. Ed. 614), the following language is used:

"We agree with the plaintiff that the only taxes contemplated by section 5219 are taxes on the shares of stock and taxes on real estate."

It was said in Bank of California v. Richardson, 248 U. S. 476, 490, 39 S. Ct. 165, 168 (63 L. Ed. 372):

"It [section 5219] permits the inclusion of 'all the shares * * * in the valuation of the personal property of the owner or holder of such shares,' and leaves it to the Legislature of each state to determine the manner and place of taxing them, 'subject only to the two restrictions' which are particularly mentioned; and therefore, by necessary implication, free from all other restrictions."

In the case of First Nat. Bank of Hartford v. City of Hartford, 187 Wis. 290, 301, 203 N. W. 721, 725, the Supreme Court of Wisconsin says:

"When the Legislature, in the course of revising the tax laws of the state, came to the matter of taxation of shares of stock in national banking associations, it was confronted by the fact that section 5219, Rev. St. U. S., authorized an ad valorem tax against stockholders on the shares of stock and on the real property owned by the association, and nothing else."

In Ex parte Buder, 271 U. S. 461, 465, 46 S. Ct. 557, 558 (70 L. Ed. 1036), which involved the question as to whether the defendants were entitled to a direct appeal to the Supreme Court from the decree granting the injunction, the court, in discussing the nature of this case, says:

"Prior to the Act of Congress of March 4, 1923, c. 267, 42 Stat. 1499 [Comp. St. § 9784], amending section 5219 of the Revised Statutes of the United States, that statute [section 12775, R. S. Mo. 1919] was confessedly valid and operative. *It was then the only method of taxation permitted by the federal law.* The act of 1923 enlarged the scope of the state's power to tax national banks. It authorized the state either to tax

the shares of a national bank, or to include dividends derived therefrom in taxable income of the holder thereof, or to tax the income of the bank. * * * "

[6] It is apparent that no tax on dividends from national bank shares was permissible until March 4, 1923, and that, prior to that time, Missouri had but one legally effective law relating to their taxation, and that was section 12775.

The question, then, is whether, when Congress by the Act of March 4, 1923, permitted either form of taxation, but not both, the scope of the Income Tax Law of Missouri was thereby enlarged to include dividends upon shares of stock in national banks, so that that law destroyed section 12775 and itself. The lower court was of the opinion that the act of Congress had that effect, citing the cases of Lionberger v. Rowse, 43 Mo. 67, and In re Rahrer, 140 U. S. 545, 11 S. Ct. 865, 35 L. Ed. 572.

The first of these cases involved the question as to whether an early Missouri law taxing national banks, which contained provisions subsequently permitted by an act of Congress, could become effective unless reenacted. The Supreme Court of Missouri, in disposing of the question, says:

"There is no force in the suggestion that, because the state tax law was passed prior to the provisions inserted in the congressional act, therefore it cannot be made to apply, but that a subsequent act must be enacted by the Legislature with direct reference to the law of Congress. If the law on our statute books attains the ends contemplated by the congressional enactment, and is not a violation or infringement thereof, it is of little moment at what particular day it was passed."

The decision in the case was later affirmed by the Supreme Court (9 Wall. 468, 19 L. Ed. 721), but no reference was made to this question.

There was presented in the case of In re Rahrer, supra, this situation: The state of Kansas had a prohibition law. Under the decisions of the United States Supreme Court in Bowman v. Railway Co., 125 U. S. 465, 8 S. Ct. 689, 1062, 31 L. Ed. 700, and Leisy v. Hardin, 135 U. S. 100, 10 S. Ct. 681, 34 L. Ed. 128, the law was not effective at the time it was enacted so far as it amounted to a regulation of interstate commerce in prohibiting the reception of liquors or their sale, upon arrival, in the form in which they were imported. Congress subsequently passed the Wilson Law (26 Stat. 313 [Comp. St. § 8738]), which provided that intoxicating liquors, upon arrival in any state, should be subject to the effect of its laws in the same manner as though the liquors had been produced therein. In holding that the state law applied to imported liquor, the court said:

"The laws of the state had been passed in the exercise of its police powers, and applied to the sale of all intoxicating liquors whether imported or not, there being no exception as to those imported, and no inference arising, in view of the provisions of the state Constitution and the terms of the law (within whose mischief all intoxicating liquors came) that the state did not intend imported liquors to be included. We do not mean that the intention is to be imputed of violating any constitutional rule, but that the state law should not be regarded as less comprehensive than its language is, upon the ground that action under it might in particular instances be adjudged invalid from an external cause.

"Congress did not use terms of permission to the state to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part. It imparted no power to the state not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction.

" * * * This is not the case of a law enacted in the unauthorized exercise of a power exclusively confided to Congress, but of a law which it was competent for the state to pass, but which could not operate upon articles occupying a certain situation until the passage of the act of Congress. That act in terms removed the obstacle, and we perceive no adequate ground for adjudging that a re-enactment of the state law was required before it could have the effect upon imported which it had always had upon domestic property."

Similar cases are State of West Virginia v. Adams Express Co. (C. C. A.) 219 F. 794, L. R. A. 1916C, 291; Adams Express Co. v. Kentucky, 238 U. S. 190, 35 S. Ct. 824, 59 L. Ed. 1267, L. R. A. 1916C, 273; In re Spickler (C. C.) 43 F. 653, 10 L. R. A. 446. The same principle is applied in Tua v. Carriere, 117 U. S. 201, 6 S. Ct. 565, 29 L. Ed. 855, in which it was held that a state insolvency law, inoperative because of a bankruptcy act, does not have to be re-enacted to be effective upon the repeal of the act. To the same effect is Butler v. Goreley, 146 U. S. 303, 13 S. Ct. 84, 36 L. Ed. 981.

In Central Pac. Rd. Co. v. Nevada, 162 U. S. 512, 16 S. Ct. 885, 40 L. Ed. 1057, the court determined that a state tax law which would be applicable to unpatented railroad grant lands but for the fact that, under the laws of the United States, such lands were not taxable, becomes effective without re-enactment upon the passage of an act of Congress authorizing the taxation of such lands. The same question of enlarging the scope of a state statute is also referred to in Silz v. Hesterberg, 211 U. S. 31, 29 S. Ct. 10, 53 L. Ed. 75. See, also, N. Y. Central R. Co. v. Public Service Commission of N. Y. (D. C.) 268 F. 558.

[7, 8] These cases indicate that the courts, in holding that state statutes include subjects not before included because of some congressional restriction or lack of permission, have done so for the purpose of carrying out, and not defeating, their intent and purpose, and to make them more, instead of less, effective. The correct rule, we think, is that, where a state enacts a law, general in its terms and intended to operate upon all subjects within its purview, but not fully effective because of some congressional inhibition or lack of permission, it becomes fully effective, without re-enactment, when that inhibition is so removed or permission so given by Congress that it can become completely operative without destroying or impairing its effectiveness or defeating the intent of the Legislature which enacted it. We find nothing to justify the conclusion that, when a state has enacted two laws, one of which is fully effective because Congress has consented to it, and the other is not effective because Congress has not consented to it, upon Congress giving its consent to the state to have either law, but not both, the scope of the ineffective law is extended so that the state has two effective laws which nullify each other, and therefore no law at all.

If, on March 4, 1923, Congress had withdrawn permission for an ad valorem tax on shares of national banks, and had permitted an income tax on dividends, the Income Tax Law of Missouri would, by virtue of the rule referred to, have been expanded to include those dividends, without re-enactment. If Congress had permitted both an ad valorem tax on shares and an income tax on dividends, both laws would, no doubt, have been held to be effective. That would be because of the obvious intention of the state to tax shares as provided in section 12775, and also to tax all income which it could lawfully and effectively reach. But the Act of March 4, 1923, gave permission for but one method

of taxation of national banks, and not both methods. To say that it was the intention of the Legislature of the state of Missouri, when it passed the Income Tax Law, that it should reach national bank shares, in case Congress permitted that form of taxation only when there was no ad valorem tax, would be to say that it was the intention of the Legislature not to tax national banks upon the happening of that event, but was to have Congress in effect repeal both methods of taxation.

To extend the rule to such lengths as are here required to bring about the result sought for by the plaintiffs would be to disregard its purpose, which is to carry out the intent of the Legislatures of the several states without requiring the idle ceremony of the re-enactment of identical laws after the removal by Congress of some impediment to their full effectiveness.

We reach the conclusion that section 12775, Revised Statutes of Missouri 1919, was the only statute of that state providing a permissible method for taxing national banks in force on and after March 4, 1923.

It follows that the decree appealed from should be reversed, and the case remanded to the District Court, with directions to dissolve the injunction and to enter a decree in favor of the defendants. It is so ordered.

Reversed.